(No. 31443.—

RAY E. STUBBLEFIELD *et al.*, Appellants, *vs.* PEOPLES BANK OF BLOOMINGTON, Exr., *et al.*, Appellees.

*Opinion filed May 18, 1950—Rehearing denied September 18, 1950.*

ROBERT F. WHITE, and WILLIAM C. INGRAM, both of Sullivan, for appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, (ROBERT J. BURDETT, and HARRY K. O'MELIA, both of Chicago, of counsel,) for appellee Ivan A. Elliott, Attorney General; STONE, STONE & HESS, of Bloomington, for appellee Peoples Bank.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Plaintiffs-appellants, heirs-at-law and beneficiaries under the will of Thaddeus Stubblefield, sought partition of the lands of decedent and a construction of the will and three codicils thereto and asked the trust for alleged charitable purposes established thereunder be declared void. Upon hearing, the circuit court of McLean County held a charitable trust was created, and dismissed the amended complaint for want of equity.

The testator devised many acres of farm and timber lands to defendant-appellee bank, as trustee, to be held for the benefit of Funk's Grove Cemetery Association and a number of admitted charities under a complex and involved system of distribution of income. The heirs contend the

trust is not a charitable one and is void as violative of the rule against perpetuities and the statute forbidding accumulations of income, asserting all of the property descends as intestate property. A freehold, therefore, is involved.

The testator died June 10, 1948, at the age of eighty-five years. The will and codicils were executed within the periods from December 13, 1944, to December 13, 1947, and were probated in McLean County. He left no surviving widow, children, brothers or sisters. The will and codicils of the testator created a single trust for designated various objects and purposes, as therein specified, with three provisions for the payment of income for life to certain grandnieces and grandnephews, the remainders to be held in perpetuity. The estate was valued and appraised at over half a million dollars.

One of the beneficiaries of the trust was Funk's Grove Cemetery Association, a corporation organized as a corporation for profit in 1891. In 1936 the articles of incorporation were amended to make its period of duration perpetual. One hundred shares of stock were outstanding in various amounts and held by about forty individuals.

Thaddeus Stubblefield, the testator, was a descendant of an old and large family. He had been the duly-elected president of the cemetery association for many years and his estate owned several shares of the capital stock. The corporation owned the cemetery plot consisting of approximately five acres on which is situated an old one-room frame chapel, built by popular subscription, and about twelve acres of adjoining land and timber on which is a caretaker's cottage. An adjoining tract of ninety acres was purchased in 1945 for $8750, which is partly in cultivation and partly devoted to reforestation. The cemetery is located one mile west of Funk's Grove, an unincorporated village near the center of Funk's Grove Township, three and one-half miles northeast of McLean and about sixteen miles southwest of Bloomington in McLean County, Illinois,

on State Route No. 66. The population by the last census of this and adjoining townships is about 3900 persons.

The burial records of the cemetery for the past thirty years show a total of 160 burials, of which about one hundred were of the Funk and Stubblefield families. The number of burials each year varied. The rules and regulations of the association establish the lots were held for sale at various prices which guaranteed perpetual care, and were exempt from taxation. Less than one hundred scattered lots remain to be sold.

The chapel, situated among the old, primitive trees on the grounds, was owned by the association, and services were held there for funerals, an occasional wedding, infrequent summer services, and for the annual stockholders' meetings. It was affiliated with no church or religious group.

The cemetery itself is of historic significance, having frequently been mentioned in articles and books on the early development of Illinois. It consists of a stand of virgin timber, probably one of the few remaining in Illinois, and attracts visitors throughout the State. Its woodlands and flora contained therein are the subject of visitation of groups of students from high schools, colleges, and universities and by the public at large.

By the fourth clause of the will, the testator devised the residue of the estate, excepting only minor bequests of personalty, to the Peoples Bank of Bloomington, in perpetual trust with specific trust powers granted in the handling, management, and application of income, in perpetuity, without power of sale.

By the fifth clause, the trustee was directed to manage the property so as to keep the timber in primitive state, not permitting any cutting or destruction, and to fence against trespassers, and not to permit any road to be cut through or around the timber. The clause also directed the trustees of the cemetery association to erect a memorial

or mausoleum upon a tract known as the "Bendfield," which was a tract of about twenty-five to thirty acres located three quarters of a mile from the cemetery proper, and directed the sale of adjoining cemetery lots by the trustees, the proceeds to be held for the same trust purposes as declared in other clauses of the will.

The seventh clause provides for the setting apart of the income from certain properties for the perpetual care and beautification of the cemetery and then for "such other religious and educational purposes as hereinafter provided;" to pay the annual income to the trustees or directors of the cemetery association to perpetually care for the cemetery; to build and maintain the chapel; to hire a minister or divinity student for periodic services at the church or chapel; to hire a custodian and assistants; to pay any taxes on nonproductive property deeded or held in trust; to pay for roads, walks and drives; to maintain custodian's quarters; to pay bond premiums of the finance officer of the association; to pay to the association a sufficient sum to build a memorial or mausoleum on the "Bendfield" tract; and to create a perpetual fund of $25,000 from fifty per cent of the income, as a permanent building fund for the building or rebuilding of the above.

The will then provides, when the reasonable needs as above outlined have been met, the trustee shall apply annual income from this property held in trust, or after-acquired property, to various objects in the order named; such as, church annuities, educational funds, and a student union building, all of which standing alone, it is conceded, would be charitable in nature. The seventh paragraph also provides that if and when there becomes a surplus in the trust from income, amounting to $150,000 to $200,000, then there shall be a gift to provide for a student union or women's dormitory to be used, "in connection with Illinois Wesleyan University."

Under the ninth and tenth clauses, certain named grand-nieces and grandnephews were given the income for life from certain properties, with remainder to the trust. There is no controversy here concerning the construction of these clauses or the manner of distribution thereunder.

The only power of sale granted is in the fifth clause of the second codicil, which gives the trustee, in its discretion, power to sell other, nonincome-producing, property.

Plaintiffs-appellants contend a trust created in perpetuity for the purpose of caring for and keeping in repair a cemetery, burial lot, or monument is a statutory trust, to be distinguished from a charitable trust, and, in absence of a statute, is void in the hands of a private trustee, and that statutory provisions in Illinois do not authorize private trusts in lands, in perpetuity, for a cemetery, public or private. They further urge it is against public policy to permit a corporation to hold land in perpetuity beyond the amount reasonably required for the purposes and objects of the corporation, or for the benefit of a privately owned cemetery, in the hands of a private trustee, and assert that where a devise in trust for uses which are partly private, or noncharitable, and intermingled with objects which are charitable in nature, where some objects may be valid, and others invalid, and all are a part of a general scheme of distribution, so that the invalid may not be separated from the valid portion, then the whole trust must be held void.

The subject matter here involved and the questions presented have occupied the courts of this and other countries for centuries. The cases on the subject are multitudinous. After a careful analysis of the myriad citations, and a review of the law governing the rule against perpetuities and the statute against accumulations, we think the issues here presented narrow down to two simple questions, either of which if answered in the affirmative is determinative of the controversy.

The first is, are the purposes, provisions, and objects of the will and codicils, as far as the cemetery association is concerned, charitable? If so, the testaments are valid. If not, they violate the prohibitions and are void. The second is, even if the provisions of the will are void as to the cemetery association, are those portions separable from the admittedly valid, charitable purposes, or are they a mixed trust, so interwoven and interlocked as to consist of a part of a general scheme of distribution? If separable, the will is valid irrespective of the benefits conferred upon the cemetery corporation.

A short analysis of the will of Thaddeus Stubblefield discloses an intent to devise for charitable purposes. Among the projects are the preservation of the primitive timber, one of the few tracts remaining in the State; the building of fences; the construction of a memorial or mausoleum on the tract known as the "Bendfield" tract; the perpetual care and beautification of Funk's Grove Cemetery, as heretofore set forth, including the building, rebuilding and maintenance of the chapel; providing the salary of a minister or divinity student of the Methodist denomination to hold services regularly or periodically in such church or chapel, for which fifty per cent of the annual income is set aside until $25,000 is created or recreated to provide for the above-specified buildings, with the expressed desire that there should be on hand at all times a substantial sum of money to be known as the "building fund" in order to build or rebuild any of these buildings; application, after the fund was accumulated, of the remaining income from the described tracts to the reasonable budgetary items of the cemetery association; then to pay annual sums to the Methodist churches at McLean, Shirley, and Bloomington; and any remaining funds therefrom were to be used to defray the expenses and tuition of young men and women, residents of Dale, Funks Grove, or Mount Hope Townships, in McLean County, who are or will attend, as stu-

dents, the Illinois Wesleyan University at Bloomington or the Illinois State Normal University in Normal, therein setting forth the conditions and limitations thereon; and after all these conditions have been met and if in future years a large surplus should exist consisting of $150,000 to $200,000, then to use such accumulated funds if they occur, or re-occur, for the purpose of constructing, enlarging, or furnishing a young women's dormitory or a student union building at Illinois Wesleyan University. The income from certain properties is set aside by certain clauses of the will to be paid for life to certain specified relatives, or the survivors, with remainders of the income therefrom to be paid to the "Funk's Grove Cemetery Association and the religious and educational purposes as hereinabove specified." The codicils, in so far as they are material here, amend the provisions of the life estates in certain particulars, and in addition provide for annual payments to the Baby Fold, an orphanage at Normal, and increase the annual payments to certain of the churches.

It is admitted that all of the donations and provisions for the benefit of the beneficiaries, except, of course, the provisions for the benefit of the relatives, are charitable in nature, with the exception of the provisions for the benefit and on behalf of the Funk's Grove Cemetery Association, it being strenuously asserted that this, being a private corporation, is not a proper subject for charitable beneficence.

We are faced, then, with the question whether the Funk's Grove Cemetery Association, a private corporation in form, is barred from receiving the benefits of this will as an eleemosynary institution. A closer survey of the nature of the association is necessary for a proper determination hereof.

Funk's Grove cemetery was established about the year 1830 by Isaac Funk, an early settler for whom Funk's Grove Township was named. The first burial took place there in 1832. Although the land was actually set aside

and dedicated for cemetery purposes at an earlier date it was conveyed by deed in 1846 for school and cemetery purposes. In 1865 the school building thereon burned down, and the premises were never again used by the trustees of schools for school purposes. Many years later, by decree of the circuit court of McLean County, the school trustees were foreclosed from any further interest in the premises, and the same reverted to the Funk heirs who offered to convey the same to a cemetery corporation to be organized for that purpose. Consequently, in 1892, a corporation for pecuniary profit was organized under the then-existing Corporation Act of 1872, by subscriptions to the capital stock, there being fifty subscribers aggregating one hundred shares of ten dollars each. The object for which it was formed was to use the lands acquired "as a burial place for the dead of the inhabitants of said township, their relatives and friends." The deed to the corporation provided the remains of those buried there should not be removed. The duration of the corporation was ninety-nine years. The cemetery operated under this charter until it was amended in 1936, when the duration was made perpetual. No dividends have ever been paid on the capital stock, and no officer or director of the association has ever received any salary or compensation, the custodian being the only person remunerated for his services in connection with the management and operation, upkeep and care of the cemetery, funds for this purpose being raised by subscription among the shareholders and residents of Funk's Grove Township. Following one of these subscription drives for upkeep the stockholders struck out the provisions in the bylaws providing for the payment of dividends. The charter provided the original capital when subscribed should be placed at interest, the income to be used as a perpetual-care fund and, this proving insufficient, subscriptions and donations were received from time to time. In 1920, twelve acres of timber adjoining the cemetery were purchased,

and in 1946 the purchase was completed of ninety additional acres lying south and west of the present cemetery site. Both purchases were made by subscriptions from among the stockholders and others.

It should be noted only a relatively small number of scattered lots remain to be sold. Any proceeds from the sale of lots in the new tract near the mausoleum, as provided in the will, do not inure to the benefit of the corporation but to the trust. It is obvious the stockholders stand to gain little if anything and then only incidentally, even should they so desire, after a necessary change in the bylaws.

Under these circumstances, can this be said to be a pecuniary corporation for profit? We think not. It must be borne in mind that this cemetery has been in existence well over a century, and, while it is true it harbors the remains of many of the Funk and Stubblefield families, yet there are many persons in the community with interests in the ground itself and in the remains of the persons buried there.

We think no useful purpose would be served by a lengthy review of the rules and decisions governing the giving in perpetuity of property to charitable corporations. Suffice it to say a gift to a charitable use with the direction that no part should be alienated creates a perpetuity which the law permits. *Dickenson* v. *City of Anna,* 310 Ill. 222; *Skinner* v. *Northern Trust Co.* 288 Ill. 229; Gray on Perpetuities, secs. 476, 597.

We have, however, set out the factual situation at some length in this case in order to show the actual circumstances here. We doubt if it can be contended with force that, under all the circumstances, Funk's Grove Cemetery Association can be said to be a corporation for profit. The cemetery was dedicated as a public burial ground long before the corporate organization was founded, and the cemetery did not lose its character by the granting of the charter.

The peculiarities of this situation namely, the public dedication, the provisions in the deeds, the striking out of the bylaw providing for dividends, the fact no dividends have ever been paid and none are contemplated, the taking of subscriptions among the stockholders and others for the building of the chapel and the upkeep of the grounds, the physical characteristics of this particular cemetery, the diffusion of the ownership of stock, the fact that only a few plots remain in the present cemetery, the rights of the descendants of those buried there,—many before the corporation was formed,—the incidental benefit to the shareholders of the Association, the personal interest the testator had in the cemetery as well as the many descendants of the Funk and Stubblefield families, the interest of the public and the schools in the cemetery and surrounding terrain,— the locale itself a shrine as well as a necropolis,—all redounding to the benefit of the general public, militate against any reasonable contention that this is a corporation for "pecuniary profit." It is a well-known maxim requiring no citation of authority that equity looks to the substance and not the form.

But even if it were strictly a "profit" corporation, we are not prepared to say this gift would not qualify as a charitable trust. The law looks with favor upon charitable trusts, and the courts apply liberal rules of construction to sustain them. They will likewise make every reasonable effort to hold the trust purely charitable, and not a mixed trust rendering the same invalid. They are liberal in adjudging a purpose charitable if there is any reasonable amount of social benefit accruing from the trust. (*Webb* v. *Webb,* 340 Ill. 407.) In construing such gifts, if there are two possible methods of construction, one of which will render the gift valid and the other invalid, the courts will adopt the construction which will sustain it. *Walker* v. *Central Trust and Savings Bank,* 318 Ill. 253, 256.

The trust need not be in its strict sense eleemosynary in character, *i.e.*, a gift made out of pity or sympathy and implying the giving of alms, but the words "charity" or "charitable purpose" are much broader in scope and entail benefits at large in which the public will benefit. They may be, among others, for educational, religious, and even, we find, for cemetery purposes. The law is merely interested in protecting and giving effect to all gifts which aid and benefit society and advance the group benefited mentally, physically, spiritually, or in some allied manner.

The early cases held that cemetery trusts are noncharitable, in that they benefit no living person and are too limited in their scope to make them of public benefit. When a trust will bring about a reasonable amount of advantage to society, as judged by the then-present standards in the community, the trust will be held to be charitable. The Statute of Charitable Uses (43 Eliz. C. 4 (1601),) was not intended to set forth an exhaustive list of trusts then existing or which might legally be created. While at common law, and later in Illinois as indicated by many of the cases cited by appellants, it was usually held that a trust to provide for a private cemetery, the upkeep of a settlor's grave, a monument, or a lot was private in nature and not charitable, and was invalid if perpetual, (*Burke* v. *Burke*, 259 Ill. 262,) in more recent times, the feeling in this respect has undergone a material change, and many States by acts of the legislatures have declared such trusts to be charitable and have allowed gifts in perpetuity. Illinois is among these. (Ill. Rev. Stat. 1949, chap. 21, par. 64.) It is to be noted the statute cited which authorizes "perpetual" cemetery care covers private as well as public cemeteries.

Professor Bogert in his able work on Trusts and Trustees (vol. 2, sec. 377, p. 1193,) says: "it would likewise appear arguable that the modern statutory trend to make all

grave maintenance a matter of public concern and thus a charity might well lead to the conclusion that the placing of monuments and markers was of sufficient public interest to justify putting a trust for that purpose into the charitable class. It can be urged with much force that decent burial, appropriate marking of graves, and the upkeep of burial grounds are parts of a single system in which modern civilized society is interested from the point of view of health, the preservation of family history, and the cultivation of the finer human sentiments." We would find it difficult to find more apt words to express our views of public benefits derived from such a trust. The Supreme Court of Errors of the State of Connecticut had this subject matter before it in *Fitzgerald* v. *East Lawn Cemetery, Inc.* 126 Conn. 286, 10 Atl. 2d 683, which involved a trust for the construction and maintenance of a memorial chapel. The court said, beginning at page 685: "The word chapel, in its ordinary significance, means a place of worship other than a large or regular church, a place of worship maintained for special purposes. * * * A chapel in connection with a cemetery is intended as a place where burial services may be conducted. These, by immemorial usage, are a recognized part of the religious services of the Christian church. * * * Such services serve, not the dead, but the living. A gift of money for the establishment and maintenance of a chapel in a cemetery is a devotion of it to a religious use. * * * The fact that under the will before us the chapel was to be built in the grounds of a private cemetery corporation is not sufficient in itself to make the gift invalid. In *Evergreen Cemetery Ass'n* v. *Beecher*, 53 Conn. 551, 553, 5 Atl. 353, it was held that, while a strictly private cemetery would not so far serve the public use as to permit the condemnation of lands for its enlargement, yet one in which the public could acquire the right to bury would be for a public use. * * * When, after the decision in *Coit* v. *Comstock*, 51 Conn. 352, 386,

50 Am. Rep. 29, decided in 1883, in which it was held that a gift to an ecclesiastical society of a fund to be held perpetually, so much thereof as might be necessary to be used to maintain certain burial lots was not within the Statute of Charitable Uses, the statutes were amended so as to put gifts for the care and maintenance of cemeteries, cemetery lots or monuments thereon in the same category with those uses previously within the statute, no distinction was made between the public and private cemeteries. * * * A bequest to build a chapel in a cemetery, though it is owned by a private corporation, where it is held out as offering burial lots for sale to the general public or those coming within a reasonably large class of that public, sufficiently serves public interest so that the bequest is one for a charitable use." We think this reasoning applies here.

This gift, made under the will for the purposes of the cemetery, is, we think, for charitable purposes. There can be little or no question about the others. A charitable intent is apparent throughout the will, and it should be sustained in its entirety.

But for the mere sake of disputation, even if we concede the nature of this gift for the benefit of the cemetery to be a private one and, therefore, void, there is nothing in the nature or the wording of the beneficial provisions to the other recipients to require the holding that the same constitute a mixed trust and, therefore, not separable or divisible. On the contrary, they are clearly separable and subject to separation which would require the sustaining of the will as to the religious purposes, the building of the chapel, the educational tuition funds, the endowment of the ministerial post, the churches, the orphanage, and the university. In any event, the heirs would not be entitled to take the same as intestate property. The authorities hold that, if a general overriding trust for charitable purposes can be found from the language used, or if such purpose runs through, permeates and modifies the whole trust in

such a manner that its purposes are thus connected, then the entire trust will not be declared void, but the portion relating to the charitable use will be given effect. (10 Am. Jur. p. 655, sec. 100; 11 C.J. 330; 14 L.R.A., N.S., 87, note; 37 L.R.A., N.S., 1002, note; 2 Bogert, Trusts and Trustees, sec. 372.) They are not, therefore, on this basis entitled to partition or to the construction of the will requested. Both questions being answered in the affirmative, the plaintiffs cannot prevail.

Thus a proper charitable purpose having been declared with a resultant vesting of the property in the trustee for the purposes enumerated, the rule against accumulations does not apply, (*Smith* v. *Renne*, 382 Ill. 26,) and even if a direction for accumulation is held to be invalid, the only result is that the income is immediately distributable to the valid charities and the heirs or next of kin are not let in. *Webb* v. *Webb*, 340 Ill. 407; *Ingraham* v. *Ingraham*, 169 Ill. 432.

The right to burial in certain lots in the cemetery and the questions presented by the purported disposition of them under the sixth clause of the will, while apparently presenting equities in favor of the widow of a deceased brother of the testator, are not properly before us in this proceeding. She is not a party to this suit; the plaintiffs, who are beneficiaries under the will, are in no position to request the relief in her behalf; and the issue is not properly presented here. This was the ruling of the chancellor and he was correct.

We think the complaint was properly dismissed for want of equity, and the decree of the circuit court of McLean County is therefore affirmed.

*Decree affirmed.*