Charles Raser, Raymond Raser by Esther Raser, His Next Friend, and Howard Glatthaar, Plaintiffs-Appellants, v. Oral Johnson et al., A. W. Wellstein, as Trustee, Ogden H. Chamberlain, as Executor of Will of Mary M. Urick, Deceased, and Latham Castle, Attorney General of State of Illinois, Defendants-Appellees, and Margaret Bell, and Neva Bentley, Plaintiffs-Appellees.

Gen. No. 10,922.

Second District.

March 20, 1956.

Released for publication April 9, 1956.

375

James H. Andrews, Harper Andrews and Campbell Andrews, all of Kewanee, for appellants.

Latham Castle, Attorney General, State of Illinois, pro se, of Springfield; John L. Davidson, Jr., First Assistant Attorney General, of Springfield, John G. Smith, and J. Calvin Bostian, both of Springfield, and Reynolds M. Everett, of Galva, Assistant Attorneys

General, of counsel; Joseph L. Shaw, of Geneseo, for
A. W. Wellstein, and Ogden H. Chamberlain, appellees.

JUSTICE EOVALDI delivered the opinion of the
court.

This is an appeal from a decree of the circuit court
dismissing a complaint for want of equity on motions
of defendants. Plaintiffs claim their suit was brought
for the purpose of construing paragraph Seventh of
the will of Mary M. Urick, deceased, providing as
follows:

"SEVENTH: I give, devise and bequeath all the rest,
residue and remainder of my estate to A. W. Well-
stein, M. D., of Geneseo, Illinois, in trust, nevertheless,
for the uses and purposes hereinafter specified. My
said trustee shall invest said estate in income produc-
ing securities. He shall use the income thereof, and
so much of the principal as in the judgment of my
said trustee may from time to time be necessary, to
pay for the hospitalization or medical supplies of
worthy persons residing in the City of Geneseo, Illi-
nois, who, in the judgment of my trustee, are unable
to pay for the same. Should any of said trust estate be
comprised of real estate, I authorize and empower my
said trustee to hold the same, leasing it for periods
not exceeding five years, on such terms as to my said
trustee shall seem proper, and I further authorize and
empower him to pay the taxes, insurance, necessary
repairs and other expenses for maintaining said real
estate, using the net income as hereinabove provided.
I further authorize and empower him to sell said real
estate, at public or private sale, at such price and such
terms as to him shall seem proper, and to convey the
same to the purchaser or purchasers, who shall not be
required to look to the application of the purchase
money. In case of the death, resignation or inability
of said trustee to serve, then a successor trustee or
trustees shall be appointed by a court of proper juris-

diction, and such successor trustee or trustees shall administer said trust in the same manner, and with the same rights and duties as those herein given to and prescribed for my said trustee."

The pleadings consisted of the complaint, with a copy of the will attached as an exhibit, and the motions to dismiss filed by the executor, the trustee and the Attorney General. In the motion filed by the executor and trustee, it was alleged that said paragraph "Seventh" was plain and unambiguous, its meaning was clear, and it needed no construction; and that same made a valid gift to charity. In his motion to dismiss, the Attorney General charged that plaintiffs did not allege facts sufficient to show that the trust created by paragraph Seventh of the will of Mary M. Urick was void because of indefiniteness or uncertainty in any particular. The motion further alleged that on the contrary the facts as alleged by the plaintiffs clearly showed that the trust was valid and enforceable; that plaintiffs did not allege facts sufficient to show that the trust was void under the rule against perpetuities; that plaintiffs did not allege facts sufficient to show that the trust was for purposes which the courts of this state did not recognize as charitable; and that plaintiffs did not allege facts sufficient to give them a right to the relief prayed for, or any part thereof. No evidence was heard.

Plaintiffs-appellants are the heirs at law who will take the property if the trust is void. They allege that the trust is void as it violates the rule against perpetuities and is not a charitable trust. They further contend that there was such doubt and ambiguity in the provisions of the will that the court should have construed the will and should have allowed attorneys' fees to the plaintiffs even though their views on the construction of the will were not adopted by the court. Defendants' position is that said Seventh paragraph of

378

the will creates a valid charitable trust and is not subject to the rule against perpetuities; that the language of said paragraph is unambiguous and does not require construction and the court properly refused attorneys' fees to plaintiffs-appellants. The first and primary issue in this case is therefore whether or not the trust created under clause Seventh of the will is a charitable trust. Plaintiffs specifically direct their attack to the following portion of said Seventh clause:

"He shall use the income thereof, and so much of the principal as in the judgment of my said trustee may from time to time be necessary, to pay for the hospitalization or medical supplies of worthy persons residing in the City of Geneseo, Illinois, who, in the judgment of my trustee, are unable to pay for the same."

A charity has repeatedly been defined by our Illinois Courts as:

". . . a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

Crerar v. Williams, 145 Ill. 625, 643 (1893) quoting from Jackson v. Phillips, 14 Allen 539, 556 (Mass. 1867). In determining whether or not a trust is charitable and valid the Illinois Courts have applied the basic rule that, ". . . Such gifts are looked upon with peculiar favor by the courts, which take special care to enforce them, and every presumption consistent

with the language used will be indulged to sustain them. . . ." Franklin v. Hastings, 253 Ill. 46, 50 (1912). This rule and the definition of charity quoted above have been applied in Illinois cases holding trusts charitable and valid. Crerar v. Williams, supra; Franklin v. Hastings, supra; Skinner v. Northern Trust Co., 288 Ill. 229, 232; Morgan v. National Trust Bank of Charleston, 331 Ill. 182, 186; Stubblefield v. Peoples Bank of Bloomington, 406 Ill. 374, 384.

In Summers v. Chicago Title & Trust Co., 335 Ill. 564, the Illinois Supreme Court applied these principles to a trust for the purpose of making loans to "worthy students to enable them to pay their senior year's tuition." The court held the trust valid and charitable, saying at pp. 568–569:

"The questions involved in this case are almost identical with those in Morgan v. National Trust Bank, 331 Ill. 182, . . . . Appellants, however, contend that this case differs from the Morgan case in that in that case the money was to be loaned to indigent pupils while in the instant case it is to be loaned to worthy students. If the word 'worthy' were the only description of the students to whom the loans were directed to be made by the testator's will there might be some force in appellants' contention. That is not the case. The loans are directed to be made to 'worthy students about to enter the senior year in the respective courses of law and medicine . . . to enable them to pay their senior year's tuition.' The word 'enable' is a compound of the prefix 'en' and the adjective 'able.' 'En' is a prefix forming verbs from nouns or adjectives, 'en' having the general sense of make. The adjective 'able' may be defined as having sufficient power, means or resources of any kind to accomplish an object. The compound word 'enable' is a verb meaning 'to make able; to give (one) power, strength or competency sufficient for the purpose.' (Webster's

New Int. Dict.) One cannot by any act enable a person to do a thing which prior to the act the person was able·to do. The term 'worthy students,' as used in the will, does not include all worthy students, but only such of them as without the loan would be unable to pay their senior year's tuition."

The objects of the testator's charity in the Summers case were, and in this case are, "worthy" persons who are unable, without the help of the gift, to provide for themselves.

Plaintiffs contend that the trustee is authorized to devote the trust to purposes other than charitable. In the Summers case, supra, the court held that where the language creating the trust expressed a general charitable intent the trustee was bound to apply the funds to recognized charitable purposes. Quoting from p. 569, the court said:

"It cannot be said or held that such students could use the loan for other than a charitable purpose, for it was to be loaned only for a purpose which was charitable and upon the approval of the dean of the law school or the dean of the medical school. The trustee was authorized to make the loan for the purpose specified in the will and for no other purpose. The provisions of the will were explicit in these respects and were not capable of the construction sought to be placed upon them by appellants."

Similarly, in the instant case, Mary M. Urick's intentions were clearly charitable. Therefore, the trustee cannot use these funds for non-charitable purposes even though a non-charitable application might otherwise be authorized by an extreme interpretation of the language. Morgan v. National Trust Bank of Charleston, supra.

In Continental Illinois Nat. Bank & Trust Co. v. Harris, 359 Ill. 86, our Supreme Court considered a

381

perpetual trust establishing a home for "worthy, honest, respectable, law-abiding American citizens. . . ." The heirs of the testator attacked the trust alleging that it was not devoted to proper objects of charity and that the trust was therefore void under the rule against perpetuities. The court held the trust valid, stating at p. 90:

"We are also of the opinion that clause 7 creates a valid charitable public trust. It is contended that this clause does not describe an object which the law recognizes as a public charitable purpose because it does not require that the persons entitled to be admitted to the home be objects of charity, such as poor, old or ill farmers, and because it requires that preference be given to kindred of the testator. We cannot accede to these contentions. . . ."

The heirs' allegation in that case that the provisions of the will were so vague and uncertain as to render it invalid were answered by the court, at p. 96:

"Nor are the provisions of clause 7 so vague and uncertain as to be invalid. As above indicated, the testator intended that those to be admitted to the home as inmates should be only such farmers who were not only honest, respectable and law-abiding American citizens, but also such as were worthy and appropriate objects of charity, whether by reason of old age, poverty, illness or other similar cause. These restrictions are not uncertain or unreasonable but for the most part are such as are ordinarily sought to be applied by charitable organizations to those seeking charitable relief."

An earlier case, Grand Prairie Seminary v. Morgan, 171 Ill. 444, upheld as charitable a trust for the education of boys "who are unable to educate themselves." The court after discussing the applicable principle, stated at p. 450:

"Tested by this principle, the primary bequest in the latter part of the fifth clause of the will in the case under consideration must be sustained. The bequest is charitable. The language of the will is, 'for the purpose of educating boys who reside in the State of Illinois, between the ages of twelve and eighteen years, and who are unable to educate themselves.' The object of the bequest is certain and so are the recipients. . . ."

The objects and the recipients of the trust here under consideration are as certain as those in the Grand Prairie case.

It is next argued by appellants that the relation between the nature of the benefit and the size of the class of possible beneficiaries is important in considering whether a trust is for a charitable purpose; and that the trust in this case is not sufficiently beneficial to the community. It is hardly conceivable that the "worthy" persons who are unable to pay medical expenses residing in the City of Geneseo, with its population of 4,325, can be so small a class that the community has no interest in the performance of the trust. Can the community be less interested in the instant trust than the City of Elgin was in a public bathhouse (Scanlan v. Kirby, 230 Ill. App. 505), than the City of Chicago was in the furtherance of the principles of a specific religious group (Harges v. Zander, 314 Ill. 170), or in loans to worthy students entering their senior years in the Northwestern University Law or Medical Schools (Summers v. Chicago Title & Trust Co., supra)? We hold this latter contention to be without merit.

■ It is further contended by appellants that the Wellstein trust appears to violate the statute, Ch. 30, Sec. 153, Ill. Rev. Stats., 1955, which prohibits the accumulation of income for a period longer than lives

383

in being and twenty-one years, unless some alternative period of accumulation is provided for. As we understand the Thellusson Act, it prohibits disposition of property in a manner which either expressly or by implication results in accumulation of income for a period longer than lives in being and twenty-one years. In the event an accumulation is directed, the direction is null and void, and income accumulated goes to the persons holding the beneficial interest from which the income was derived. The instant trust neither expressly nor by implication provides that the income from the trust should be accumulated for any period of time. On the contrary, it directs that the income be used, and further authorizes that the principal may be invaded to carry out the purposes of the trust. This cannot reasonably be considered as an authority to the trustee to accumulate.

In Webb v. Webb, 340 Ill. 407, an heir sought to have a charitable trust held void under the Thellusson Act. The will in that case provided for the establishment of a sinking fund to restore, replace and make major improvements and additions to buildings held in trust for charitable purposes. The court held that the trust did not violate the Act, pointing out that to violate the Act the will must in effect direct an accumulation. In the absence of a clear intent that there should be an accumulation, the court would not speculate whether the trustee had the power to accumulate beyond the permissible period. At p. 419, the court said:

"All of appellants' case is based primarily on the proposition that this will provides for an accumulation, contrary to the statute. It cannot be known until after the running of the statute whether there in fact will be, though contrary to the intent and purpose of the testator, such accumulations of surplus of this

384

sinking fund over and above expenditures as might exist, in violation of the act. There is no reason to suppose that there will be, and for that reason appellants have no interest whatever in this estate beyond the annuities given them under the will. . . ."

This same observation is made in Stubblefield v. Peoples Bank of Bloomington, supra, where the court said at p. 388:

". . . and even if a direction for accumulation is held to be invalid, the only result is that the income is immediately distributable to the valid charities and the heirs or next of kin are not let in. Webb v. Webb, 340 Ill. 407; Ingraham v. Ingraham, 169 Ill. 432."

Finally it is urged by appellants that the Trial Court erred in not allowing attorneys' fees. As a general rule, attorneys' fees cannot be taxed as costs unless allowed by statute. Where a will is so ambiguous as to require construction, the estate in the discretion of the Trial Court may be required to bear the expense of that construction including attorneys' fees. These plaintiffs, as heirs, are interested in having the trust declared void, which is all the relief they request. This fact alone casts substantial doubt upon their right to attorneys' fees since those fees would be paid from the very fund which they seek to destroy. Tincher v. Arnold, 147 Fed. 665 (CCA 7th, 1906); Dime Savings & Trust Co. v. Watson, 208 Ill. App. 382. We are concerned here with whether the plaintiffs had reasonable legal grounds for requesting construction. The terminology employed by the testator was so similar to that used in other wills previously construed by the courts of this state as to remove any reasonable question of its validity.

In Tincher v. Arnold, supra, an heir at law sought to have provisions of a will establishing a charitable

trust declared void on grounds similar to those in the instant case. The complaint was dismissed and the Trial Court refused to tax attorneys' fees as costs. In affirming, the Circuit Court of Appeals adopted the decision of the Trial Court, which is quoted at p. 677:

"When the terms of a will are so ambiguous that resort to a court of equity is necessary to obtain a construction of the said will it may be proper for the court to order the costs of the parties to the proceeding, together with reasonable solicitor's fees, to be paid out of the estate of the testator. Such cases have arisen where the executor has filed a bill to have determined the respective rights of various legatees which under the ambiguous terms of the will are not clearly defined, and which the executor is justified in asking the aid of equity in construing. In such a case it is equitable that the common fund should bear the expenses of the proceeding. This cause however presents no such situation. Complainant seeks to have the court declare void testator's bequest to charity, and the trust failing, she would then take the property as heir. The suit is one plainly for her own interest alone, and not for the interest of the defendant trustees who have been in possession of the property for years and engaged in carrying out the terms of the will. . . ."

The court also pointed out that the primary purpose in bringing the suit was to have the trust provisions of the will declared void, and it was only incidentally that a construction of the will was required.

In the case of Walliser v. Northern Trust Co. of Chicago, 344 Ill. App. 125, this court held that plaintiffs in an unsuccessful action to enforce a supposed interest by a construction of a will which would have given one of the plaintiffs property free from the testamentary trust were not entitled to an allowance for attorneys' fees and costs out of the trust estate.

In the case of Village of Hinsdale v. Chicago City Missionary Society, 375 Ill. 220, the court said at p. 237:

"This court has aptly stated, concerning the payment of fees to heirs in a proceeding for the construction of a will: 'We know of no authority in this State, and have been cited to none, which would authorize the payment of solicitors' fees to a defendant or cross-complainant whom this court finds to have no present interest under the will and therefore no interest in its construction.' Brumsey v. Brumsey, 351 Ill. 414."

After a careful consideration of the case, we are satisfied that the judgment of the Circuit Court dismissing the complaint for want of equity and not allowing attorneys' fees is correct, and it will be affirmed.

Judgment affirmed.

DOVE, P. J. and CROW, J., concur.