FEDERATION PHARMACY SERVICES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4787–78X.     Filed July 26, 1979.

*Michael Trucano,* for the petitioner.
*Kevin M. Bagley,* for the respondent.

OPINION

STERRETT, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(c)(3). Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The issue is whether petitioner is organized and operated exclusively for charitable purposes within the meaning of section 501(c)(3).

This case was submitted for decision on a stipulated administrative record under Rule 122, Tax Court Rules of Practice and Procedure. The stipulated record is incorporated herein by this reference.

Petitioner Federation Pharmacy Services, Inc., is a nonprofit Minnesota corporation with its principal place of business in St. Paul, Minn. Petitioner filed its application for exemption as an organization described in section 501(c)(3) on March 16, 1977. On February 14, 1978, respondent issued a final ruling denying petitioner's application. The request for exemption was denied on the ground that petitioner is not organized and operated exclusively for any charitable purpose.

Petitioner was organized in November of 1976 to provide prescription drugs at discount prices to the elderly and handicapped. It was organized primarily under the auspices of the Metropolitan Senior Federation. The Metropolitan Senior Federation is a Minnesota nonprofit corporation whose purpose is to enhance the well-being of senior citizens in the Minneapolis-St. Paul metropolitan area.

Prior to petitioner's organization, the Metropolitan Senior Federation had arranged with Script Shoppes, Inc., a commercial pharmacy, to obtain a special discount of 10 percent off the lowest verifiable retail price in the Minneapolis-St. Paul area on drugs sold to Metropolitan's elderly members. The arrangement also provided for delivery services to certain high-rise apartments occupied by senior citizens and to other senior citizens

who were not ambulatory or were otherwise unable to obtain their drugs personally. Because of substantial losses, however, Script Shoppes, Inc., was forced to discontinue its operations. Faced with the loss of Script's valuable services, Metropolitan negotiated the purchase of Script's remaining inventory and operating assets. Petitioner was later formed to make the acquisition and to operate the pharmacy.

Initially, petitioner hoped to break even, where its predecessor previously had incurred losses, by using the services of volunteers (for mailing prescriptions, completing patient profiles, maintenance, etc.) instead of paid employees. In addition, local community leaders and charitable foundations had expressed an interest in the project, and it was believed that gifts could be obtained to help defray some of petitioner's operating expenses. Petitioner decided later to apply all such gifts directly to benefit financially distressed senior citizens who, because of a catastrophic illness or accident, incurred large prescription drug bills. Moreover, petitioner decided upon its formation that the needs of handicapped persons paralleled those of the elderly and, therefore, made purchase discounts and delivery services available to handicapped persons, too.

Petitioner's initial capital was raised by two loans, one from a bank for approximately $20,000 and another from Metropolitan for approximately $10,000. Petitioner intends to repay those loans with operating funds and to continue financing its operations with its sales revenues. In this respect, petitioner's income statement for its first 2 months of operation reflects a net profit of $878.11. After repaying its debts, petitioner intends to apply any excess receipts over expenses to reduce its drug prices. Petitioner's prices generally are set by a survey of local retail drug prices. It charges the lowest retail price available for each drug on the survey, reduced by a 5-percent discount. Petitioner intends to return any excess receipts realized in the operation of its business to its elderly and handicapped patrons through further price reductions. However, there is no commitment to reduce the amount charged below cost.

Although petitioner is required by the Minnesota State Pharmaceutical Board to serve the general public, less than 2 percent of its sales at normal retail prices are in fact made to persons other than senior citizens and handicapped persons. Only members of petitioner are entitled to the 5 percent below retail

price allowance on drugs. Petitioner's members are all those persons holding VIP Buying Plan cards issued by the Metropolitan Senior Federation. Sales to the general public constitute an insubstantial part of its activities. Petitioner does not advertise and does not sell toiletry articles, magazines, cards, or other items normally sold for profit by pharmacies. All items sold qualify for Minnesota State sales tax exemption as "prescribed drugs and medicine intended for use, internal or external, in the cure, mitigation, treatment or prevention of illness or disease in human beings." Minn. Stat. Ann. sec. 297A.25(b) (West Supp. 1979).

Petitioner's organization and operations have been at the direction of various community leaders, and none of them has obtained any personal financial benefit from their participation. In the event of petitioner's dissolution, its assets will be distributed to or for the benefit of such organizations, causes, or projects as in the judgment of the court supervising dissolution will accomplish petitioner's general purposes. If court supervision of dissolution is not required or permitted under Minnesota law, then the assets will be distributed to or for the benefit of other section 501(c)(3) organizations or, in default thereof, to the State or local government for a public purpose.

In his final adverse ruling, respondent determined that petitioner is not organized and operated exclusively for a charitable purpose within the meaning of section 501(c)(3).[1] In this respect, respondent's ruling states in pertinent part:

The sale of prescription drugs to senior citizens and handicapped persons is a trade or business normally carried on for profit. Sales of prescription drugs to the elderly and the handicapped even at a discount is not, without more, in furtherance of a charitable purpose.

Petitioner contends that the promotion of health and the relief of financial distress of a recognized charitable class, i.e., the aged and handicapped, are generally considered to be charitable purposes, and that petitioner is organized to and in fact does promote the health of and relieve the financial distress of its elderly and handicapped members.

Section 501(a) exempts from income tax, among others,

---

[1] On brief, respondent limits his arguments to petitioner's operations. We shall likewise confine our discussion to petitioner's operations. Nevertheless, we find that petitioner's purposes for organizing are identical to those for which it operated. Compare sec. 1.501(c)(3)–1(b)(1), Income Tax Regs., with sec. 1.501(c)(3)–1(c)(1), Income Tax Regs.

organizations described in section 501(c)(3). Section 501(c)(3) provides in pertinent part:

SEC. 501(c). LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*       \*       \*       \*       \*       \*       \*

(3) Corporations, \* \* \* organized and operated exclusively for \* \* \* charitable, \* \* \* purposes, \* \* \* no part of the net earnings of which inures to the benefit of any private shareholder or individual, \* \* \*

The original burden is on petitioner herein to prove by a preponderance of the evidence that it falls within the intendment of the statute, i.e., that it is operated *exclusively* for charitable purposes. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488, 492 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure. While the case before us is a rather close one, we hold that petitioner has failed, on the administrative record before us, to carry its burden.

In order to qualify as an organization operated *exclusively* for an exempt purpose, the organization must be engaged primarily in activities that accomplish one or more exempt purposes. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. An organization will not qualify for exemption under section 501(c)(3), however, if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. In making the appropriate analysis, we must focus on the purpose rather than the nature of the organization's activities. *est of Hawaii v. Commissioner*, 71 T.C. 1067 (1979); *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352 (1978); *Golden Rule Church Association v. Commissioner*, 41 T.C. 719 (1964); see *Trinidad v. Sagrada Orden de Predicadores*, 263 U.S. 578 (1924); *San Francisco Infant School v. Commissioner*, 69 T.C. 957 (1978). Thus, an organization whose activities constitute a trade or business or generate a profit may still be exempt provided that those activities accomplish an exempt purpose. Sec. 1.501(c)(3)–1(e)(1), Income Tax Regs.; *B.S.W. Group, Inc. v. Commissioner, supra.* Compare *Randall Foundation v. Riddell*, 244 F.2d 803 (9th Cir. 1957), with *Passaic United Hebrew Burial Association v. United States*, 216 F. Supp. 500 (D. N.J. 1963). Petitioner must fail herein because, at least as presently constituted, it is operated for a substantial commercial purpose.

It is clear that petitioner's exclusive purpose for being, its raison d'etre, is to sell drugs, an activity that is normally carried

on by a commercial profitmaking enterprise. It does not serve as an adjunct to a larger exempt entity. It operates in the manner of an old-fashioned cooperative. We fail to see how the fact that it happens to deal in drugs can convert it to a section 501(c)(3) organization. If it could be so converted, then so could a store selling orthopedic shoes, crutches, health foods, or any other product beneficial to health. Virtually everything we buy has an effect, directly or indirectly, on our health. We do not believe that the law requires that any organization whose purpose is to benefit health, however remotely, is automatically entitled, without more, to the desired exemption. We have been cited no evidence that Congress intended to exercise its grace in such an expansive manner.

To support our finding of a substantial commercial purpose, we make several points. The selling of goods, health or otherwise, at a discount, is not, of itself, a charitable deed. Cf. *Pulpit Resource v. Commissioner*, 70 T.C. 594 (1978); *Sonora Community Hospital v. Commissioner*, 46 T.C. 519 (1966). Many profitmaking organizations sell at a discount. Nor does the fact that the petitioner seeks to sell its drugs at cost alter the result; so does an old-fashioned cooperative, yet it is not entitled to classification as charitable.

Petitioner's sole activity is in direct competition with profitmaking drugstores which are obviously commercially oriented. The fact that the item sold bears a relationship to health care does not remove the commercial taint or make the competition with drugstores any less disabling. Certainly, its purpose of selling at a discount, as distinguished from below cost, smacks more of commercialism than of charity. An entirely different situation would pertain if the petitioner were required by its bylaws to provide drugs at no, or below, cost to some indigent elderly or handicapped. As it is, financial need is not a stated requirement for membership.

We further note that as soon as any member is unable to pay the full price charged by petitioner for its drugs, the member will cease to receive the benefits offered by membership. It is clear, therefore, that petitioner does not alleviate poverty and does not promote health, except to the same extent that any commercial cooperative or pharmacy would. We dealt with a similar issue in the case of *B.S.W. Group, Inc. v. Commissioner*, *supra* at 359–360, where we said:

although to some extent fees will reflect ability to pay, it does not appear that petitioner ever plans to charge a fee less than "cost." To be sure, petitioner states that its fee is "nominal," and it may in fact be lower than those charged by other firms. However, we think that this is not enough to prove that petitioner's purposes are primarily exempt. In this respect, petitioner resembles certain health care organizations which have sought classification under section 501(c)(3) on the ground that they provide medical services which are of great social value. Despite the public benefit of the services provided, some degree of free or below-cost services to patients has generally been required to qualify these organizations as charitable before exemption has been granted under section 501(c)(3). See *Hassett v. Associated Hospital Service Corp.*, 125 F.2d 611, 614–615 (1st Cir.); *Sonora Community Hospital v. Commissioner*, 46 T.C. 519, 525–526, affirmed per curiam 397 F.2d 814 (9th Cir.); *Lorain Avenue Clinic v. Commissioner*, 31 T.C. 141, 160–161. It has also been held that a policy of charging low, rather than high, prices does not render medical services charitable. See *Lorain Avenue Clinic v. Commissioner, supra* at 161. See also *Medical Diagnostic Association v. Commissioner*, 42 B.T.A. 610, 615–616.

See also *Sound Health Association v. Commissioner*, 71 T.C. 158, 172, 184–185 (1978).

For all the foregoing reasons we sustain respondent's determination that petitioner does not qualify for exemption as an organization described in section 501(c)(3).

*Decision will be entered for the respondent.*

Reviewed by the Court.

TIETJENS, *J.*, dissenting: I respectfully dissent. The issue, as I understand it, is whether petitioner is operated *exclusively* for charitable purposes. The majority opinion fails entirely to analyze and apply the applicable law on this point, but instead gives a cursory opinion on a difficult factual issue. After carefully considering section 501, the regulations thereunder, cases thereon, and the facts of this case, I feel obliged to hold for petitioner.

Section 501(a) exempts from income tax, among others, organizations described in section 501(c)(3). Section 501(c)(3) provides in pertinent part:

SEC. 501(c). LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*　　\*　\*　　\*　　\*　　\*　　\*

(3) Corporations, \* \* \* organized and operated exclusively for \* \* \*

charitable, * * * purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * *

Again, the issue here is only whether petitioner is operated *exclusively* for charitable purposes.

In order to qualify as an organization operated *exclusively* for an exempt purpose, the organization must be engaged primarily in activities that accomplish one or more exempt purposes. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. An organization will not qualify for exemption under section 501(c)(3), however, if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. In this regard, we must focus on the purpose rather than the nature of the organization's activities. *est of Hawaii v. Commissioner*, 71 T.C. 1067 (1979), on appeal (9th Cir., June 1, 1979); *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352 (1978); *Golden Rule Church Association v. Commissioner*, 41 T.C. 719 (1964); see *Trinidad v. Sagrada Orden de Predicadores*, 263 U.S. 578 (1924); *San Francisco Infant School v. Commissioner*, 69 T.C. 957 (1978). Thus, an organization whose activities constitute a trade or business or generate a profit may still be exempt provided that those activities accomplish an exempt purpose. Sec. 1.501(c)(3)–(1)(e)(1), Income Tax Regs.; *B.S.W. Group, Inc. v. Commissioner, supra*. Compare *Randall Foundation v. Riddell*, 244 F.2d 803 (9th Cir. 1957), with *Passaic United Hebrew Burial Association v. United States*, 216 F. Supp. 500 (D. N.J. 1963).

Petitioner contends that its activities accomplish two exempt purposes—the promotion of health and the relief of financial distress of the aged and handicapped—both of which are charitable purposes. The term "charitable" is used in section 501(c)(3) in its generally accepted legal sense. Sec. 1.501(c)(3)–1(d)(2), Income Tax Regs. Although it is impossible to enumerate all purposes held to be charitable, the relief of poverty and the promotion of health are certainly two recognized charitable purposes. 4 A. Scott, Trusts, sec. 368, p. 2853 (3d ed. 1967); G. Bogert, Trusts and Trustees, secs. 373 and 374 (2d ed. 1977 rev.). I express no opinion, however, on whether petitioner's activities accomplish the relief of poverty, for I believe that they directly promote the health of petitioner's customers and thus may qualify for exemption.

Again, the promotion of health has long been recognized as a

charitable purpose separate and distinct from the relief of poverty. 4 A. Scott, *supra* sec. 372 at 2893–2897; see G. Bogert, *supra* sec. 374 at 120. Thus, "the courts have defined 'charity' to be something more than mere alms-giving or the relief of poverty and distress, and have given it a significance broad enough to include practical enterprises for the good of humanity operated at a moderate cost to those who receive the benefits." *Young Men's Christian Ass'n v. Lancaster County*, 106 Neb. 105, 182 N.W. 593, 595 (1921). Accord, *Evangelical Lutheran Good Samaritan Society v. County of Gage*, 181 Neb. 831, 151 N.W.2d 446, 449 (1967).

Usually, cases holding the promotion of health to be a charitable purpose have involved the establishment of hospitals, wards, or beds in a hospital, the provision of nurses to attend the poor, or the advancement of medical science by research or otherwise. 4 A. Scott, *supra* sec. 372 at 2894–2895; G. Bogert, *supra* at 112–115. I have found no cases holding a pharmacy to be either charitable or noncharitable. There are, however, cases in which the operation of a medical dispensary and the provision of medical supplies have been held to accomplish a charitable purpose because they promote health. *In re Keenan's Will*, 171 Wis. 94, 176 N.W. 857 (1920); *Raser v. Johnson*, 9 Ill. App. 2d 375, 132 N.E.2d 819 (1956). I believe that the establishment and maintenance of petitioner's pharmacy likewise promotes health. Petitioner's pharmacy sells drugs only; it does not sell toiletry articles, magazines, cards, or other items unrelated directly to health care. The drugs are used in the mitigation or prevention of disease and illness. Clearly their sale promotes health.

The majority, however, suggests that petitioner's activities do not promote health sufficiently to constitute a charitable purpose. Thus it states: "We do not believe that the law requires that any organization whose purpose is to benefit health, however remotely, is automatically entitled, without more, to the desired exemption." This, of course, states the obvious while ignoring the substance of petitioner's activities. Petitioner is not selling clothes, food, records, or other items unrelated *directly* to the promotion of health. It is selling prescription drugs to be used in the mitigation or prevention of disease and illness. If the sale of those drugs does not *directly* and *immediately* promote health, nothing does.

Nevertheless, an organization does not qualify as charitable

under section 501(c)(3) and the common law merely because it promotes health. It also must be operated not for the profit of its owners or operators, 4 A. Scott, *supra* at secs. 372.1 and 376; and must benefit a class of people large enough to constitute a public benefit. 4 A. Scott, *supra* at sec. 372.2. See also sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs. It is clear that petitioner did not operate for the profit of any individual. Although it paid a few of its employees, including its pharmacist, for their services, there is no indication that they received anything more than a reasonable salary or otherwise attempted to drain petitioner of its resources. Cf. *Mabee Petroleum Corp. v. United States*, 203 F.2d 872, 875 (5th Cir. 1953); *Pulpit Resource v. Commissioner*, 70 T.C. 594, 612 (1978); *Saint Germain Foundation v. Commissioner*, 26 T.C. 648, 659–660 (1956). Neither is there any indication that the class of people benefiting from petitioner's activities is too small or select to constitute a public benefit.[1] I would, therefore, hold that petitioner's activities accomplish an exempt charitable purpose.

Having decided that petitioner's activities accomplish a charitable purpose, I must next decide whether they do so *exclusively*. "This plainly means that the presence of a single [nonexempt] * * * purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly [exempt] * * * purposes." *Better Business Bureau v. United States*, 326 U.S. 283 (1945); see *St. Louis Union Trust Co. v. Commissioner*, 374 F.2d 427, 431 (8th Cir. 1967); *Stevens Bros. Foundation, Inc. v. Commissioner*, 324 F.2d 633, 638 (8th Cir. 1963), affg. on this point 39 T.C. 93 (1962), cert. denied 376 U.S. 969 (1964); *Fides Publishers Ass'n. v. United States*, 263 F. Supp. 924, 934–936 (N.D. Ind. 1967); *Christian Manner International v. Commissioner*, 71 T.C. 661, 668 (1979); *Christian Stewardship Assistance v. Commissioner*, 70 T.C. 1037, 1041–1042 (1978). In this respect, respondent argues that petitioner's activities are indistinguish-

---

[1]Respondent suggests, on brief, that the administrative record is somewhat deficient in describing the criteria used to determine who qualifies for the discount as elderly or handicapped. I think that this argument is untimely. Nothing in the record suggests that this issue was raised while respondent considered petitioner's ruling requests. Consequently, petitioner had no occasion to furnish additional information on its criteria for granting its discount. Under these circumstances, it would be inappropriate to consider respondent's argument. *Peoples Translation Service/Newsfront International v. Commissioner*, 72 T.C. 42 (1979). In any event, respondent does not suggest that the size of the class benefiting from petitioner's activities is too small or select to constitute a public benefit. He merely questions the precision by which the "elderly" and "handicapped" may be described.

able from those of a trade or business normally carried on for profit and thus further a substantial nonexempt commercial purpose. Respondent especially emphasizes that petitioner generally does not sell its drugs below cost or give them away.

Certainly, failure or unwillingness to provide free or below cost service indicates a nonexempt commercial purpose. *Hassett v. Associated Hospital Service Corp.*, 125 F.2d 611 (1st Cir. 1942); *Sonora Community Hospital v. Commissioner*, 46 T.C. 519 (1966), affd. per curiam 397 F.2d 814 (9th Cir. 1968); *Lorain Avenue Clinic v. Commissioner*, 31 T.C. 141 (1958). See also *Peoples Translation Service/Newsfront International v. Commissioner*, 72 T.C. 42 (1979). But free or below cost service is not necessarily a prerequisite to finding a charitable purpose. The promotion of health generally is a charitable purpose separate and distinct from the relief of poverty and, absent the proscribed commercial purpose, can be the basis for tax exemption. See *Eastern Kentucky Welfare Rights Org. v. Simon*, 506 F.2d 1278 (D.C. Cir. 1974), vacated and remanded on other grounds 426 U.S. 26 (1975); *Northern Calif. Central Services, Inc. v. Commissioner*, — Ct. Cl. —, 591 F.2d 620 (1979); *Sound Health Association v. Commissioner*, 71 T.C. 158 (1978). And this is precisely the position taken by respondent in Rev. Rul. 69–545, 1969–2 C.B. 117, 118. See also *Pulpit Resource v. Commissioner*, 70 T.C. 594, 611 (1978), in which this Court held a religious organization whose sole activity was the sale of religious literature to clergy at a net profit to be exempt under section 501(c)(3). Although none of the literature was sold at or below cost, we held that their sale was an integral part of and incidental to the organization's avowed religious purpose and, thus, lacked the proscribed commercial purpose. Accord, *Squire v. Students Book Corp.*, 191 F.2d 1018 (9th Cir. 1951); *Aid to Artisans, Inc. v. Commissioner*, 71 T.C. 202 (1978); *Saint Germain Foundation v. Commissioner*, 26 T.C. 648, 657–658 (1956).

As I see it, the issue, then, is not merely whether petitioner sells its drugs at or below cost, but whether its activities further or accomplish a substantial nonexempt commercial purpose. See sec. 1.501(c)(3)–1(c)(i), Income Tax Regs. Compare *Pulpit Resource v. Commissioner*, 70 T.C. 594 (1978), with *Christian Manner International v. Commissioner*, 71 T.C. 661 (1979). This is essentially a factual determination resolved on the basis of the entire administrative record. *B.S.W. Group, Inc. v. Commission-*

*er, supra* at 357. Free or below cost service is only one of several factors to consider in making that determination. Others include the particular manner in which the organization's activities are conducted, the commercial hue of those activities, and the existence and amount of annual or accumulated profits. *B.S.W. Group, Inc. v. Commissioner, supra.* All of these must be considered, for no single factor alone is determinative.

Considering the entire administrative record, I feel compelled to hold for petitioner. There is almost no indication here of a commercial purpose. Although petitioner expects to earn a small profit, all profits are to be applied first to repay petitioner's startup loans and then to reduce prices further. See *Aid to Artisans, Inc. v. Commissioner, supra* at 212; cf. *Pulpit Resource v. Commissioner, supra* at 612. Moreover, petitioner does not operate as a commercial pharmacy generally does. It does not sell items unrelated directly to health care and normally sold by pharmacies for profit; neither does it advertise. And, unlike a commercial enterprise, petitioner depends upon the services of volunteers to continue operating. Cf. *Saint Germain Foundation v. Commissioner, supra* at 659. Thus, although it performs one of the functions that commercial pharmacies perform, viz the sale of prescription drugs, petitioner's manner of operation and its lack of large annual or accumulated profits convince me that its activities do not further or accomplish a substantial commercial purpose.

Notwithstanding all these factors indicating that petitioner's activities do not further a substantial commercial purpose, and without even considering them to be relevant, the majority concludes that petitioner is operated for a substantial commercial purpose. In reaching its conclusion, it relies on several points.

First, the majority states that petitioner operates in the manner of "an old-fashioned cooperative," and that this is indicative of a substantial commercial purpose. This begs the very issue to be decided here. Section 1381(a)(1)(A) defines a cooperative as any corporation operating on a cooperative basis other than an exempt organization. Before this Court can find petitioner to be a cooperative, we must first decide whether petitioner is, in fact, exempt. The mere fact that petitioner may operate on a cooperative basis does not prevent it from being exempt. Otherwise, the requirement of section 1381(a)(1)(A)

would be meaningless. Thus, in *Sound Health Association v. Commissioner, supra* at 188, we held a health maintenance organization that furnished prepaid hospitalization and medical care on a cooperative basis to be exempt. There, we emphasized that the cooperative nature of the organization did not prevent exemption so long as it benefited a class large enough to constitute a public benefit. The majority does not find or suggest that the class to be benefited in the case at hand is too small or select to constitute a public benefit. From this, I can conclude only that the majority believes *Sound Health Association* to be decided incorrectly.

Second, the majority states that "petitioner's sole activity is in direct competition with profitmaking drugstores which are obviously commercially oriented." Certainly, petitioner is probably competing to some extent with commercial pharmacies. But competition is only one factor to consider in determining whether petitioner's activities further a substantial commercial purpose. See *B.S.W. Group, Inc. v. Commissioner, supra* at 358–359. It is not dispositive; no factor is. Thus, many organizations have been held to be exempt even though they may be in direct competition with similar profitmaking enterprises. E.g., *Eastern Kentucky Welfare Rights Org. v. Simon, supra* (hospital); *Aid to Artisans, Inc. v. Commissioner, supra* (handicrafts import business); *Sound Health Association v. Commissioner, supra* (cooperative-type hospital); *Pulpit Resource v. Commissioner, supra* (religious publishing company).

When this case was first assigned to me, I considered many factors in reaching a conclusion that petitioner's activities do not further a substantial commercial purpose. I have discussed most of them above. The majority, however, completely ignores those factors, failing even to consider or mention them in its opinion. It, instead, cites the competitive nature of pharmacies generally as its main reason for denying exemption. Such an approach is unsupported by the law.

Third, the majority concludes that petitioner does not provide free or below cost drugs to its elderly and handicapped patrons, another factor generally indicating a commercial purpose. This conclusion is completely unsupported by the record. Petitioner has established a special fund to which contributions may be made to help pay for prescription drugs for elderly patrons who

suffer from a catastrophic illness or accident. Thus, some free or below cost drugs are provided directly with that fund.

Moreover, petitioner is generally selling all drugs below their real or economic cost. Petitioner's predecessor was a pharmacy that could not earn a profit by selling drugs at such a large discount; its bankruptcy is mute testimony to that fact. Petitioner has been able to earn a slight profit only by using the services of volunteers to operate. Even though petitioner may be earning a marginal cash profit, it is actually operating and selling its drugs at an economic loss. The volunteer services are being applied by petitioner to help defray its operating costs by reducing its salary expenditures and thus subsidize the price of its drugs. In a very real sense, therefore, those drugs are being sold below cost. If this price subsidy had instead been received in the form of cash contributions, the majority certainly would have held petitioner to be exempt. Yet, it somehow manages to ignore this other important factor in reaching its conclusion that petitioner operated for a substantial commercial purpose. I see no reason for distinguishing between contributions of cash, on the one hand, and services, on the other, much less for ignoring those contributions altogether.

Finally, I note that the majority relies primarily on one case, *B.S.W. Group, Inc. v. Commissioner, supra,* for its conclusion that petitioner is operated for a substantial commercial purpose. In *B.S.W. Group, Inc.,* the petitioner was a corporation whose sole activity was the sale of consulting services to nonprofit or exempt organizations interested in rural-related policy and program development. Those activities certainly did not promote health, and the Court was unable to determine whether they accomplished any exempt purpose at all. In this regard, we stated:

petitioner's only role is that of a conduit linking individual researchers with interested client organizations seeking a substitute for full-time staffing. This aspect of petitioner's service is not inherently charitable, educational, or scientific. However, we would be sympathetic to petitioner if the record showed that the research conducted by the independent consultants in fact furthered exclusively exempt purposes. Unfortunately, the record does not contain an explanation of what is encompassed in research involving such areas as "alternative" housing, "alternative" financing for entrepreneurs, or solid waste management. Petitioner must explain how such vaguely defined activities further an exempt, and not commercial, purpose. See *Levy Family*

*Tribe Foundation, Inc. v. Commissioner,* 69 T.C. 615, 619. [*B.S.W. Group, Inc. v. Commissioner, supra* at 359.]

The decision obviously turned in large part on the fact that the organization's activities did not accomplish an exempt purpose. In this case, however, petitioner's activities directly promote health in a manner that accomplishes a charitable purpose. This point is ignored by the majority, which instead, relies on *B.S.W. Group, Inc.,* for its conclusion that petitioner's activities further a substantial commercial purpose.

But more importantly, *B.S.W. Group, Inc.,* requires us to consider many factors in making that determination—something that the majority fails to do. The Court there considered some of the relevant factors to include: (1) The particular manner in which the organization's activities are conducted; (2) whether the organization provides some free or below cost services; (3) whether it has solicited or received voluntary contributions from the public; (4) the competitive nature of its activities; (5) the existence and amount of annual or accumulated profits; and (6) whether its activities of conducting a trade or business relate to an exempt function. Although this listing is not exhaustive, it reflects the type of consideration required in determining whether an organization's activities further a substantial commercial purpose. The majority fails to give such consideration to petitioner's case, perhaps because its opinion merely reflects a conclusion in search of support. I believe that the support for that conclusion is lacking.

FAY, DAWSON, and SIMPSON, *JJ.,* agree with this dissenting opinion.