**RANDALL FOUNDATION, Inc.,**
Appellant,

v.

Robert A. RIDDELL, Director of
Internal Revenue, District of
Los Angeles, Appellee.

No. 15076.

United States Court of Appeals
Ninth Circuit.

Jan. 18, 1957.

804

Gibson, Dunn & Crutcher, Bert A. Lewis, Los Angeles, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, and Karl Schmeidler, Attorneys, Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Attorney, Edward R. Mc-Hale, Robert H. Wyshak, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HEALY, LEMMON and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Randall Foundation, Inc., filed an action against the District Director of Internal Revenue for refund of taxes allegedly collected without warrant. The District Court entered judgment for the District Director and appeal has been taken therefrom. The case was tried upon a stipulation of a great many facts, but there was considerable testimony given, mostly by witnesses for Foundation. It was found as a fact that Foundation was not organized and operated exclusively for charitable purposes during the fiscal years involved within the meaning of Section 101(6) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 101(6), and concluded this corporation was not therefore entitled to an exemption for federal income taxes.

At the outset, there is the contention of the Director that the appeal was not timely. The record shows a minute order of April 6, 1955, as follows:

"The judgment will be for the defendant. Counsel will prepare and submit Findings of Fact, Conclusions of Law, and Judgment under the Rules."

The trial court is required by the Federal Rules of Civil Procedure, 28 U. S.C.A., in a case tried without a jury, to enter findings of fact and conclusions of law "and direct the entry of the appropriate judgment."[1] The first entry

---

1. Rule 52(a), Federal Rules of Civil Procedure.

in the docket dated April 6, 1955, carried out this direction. When the formal findings, conclusions and judgment were placed on file, the entry dated January 23, 1956, constituted the only "notation of a judgment in the civil docket"[2] in this case. The appeal filed February 20, 1956, was therefore timely.[3]

Appellant urges that, since there is a written stipulation as to certain facts, this Court must disregard the findings of the trial court and decide the case on our interpretation of the documents. Some courts have presumed to state such a rule where the evidentiary facts are entirely based upon stipulation or documents. Even there, an unwarranted circumscription of the powers of the trial judge is involved. Furthermore, the appellate court would assume thereby the power of making findings of fact, which passed out of the federal system with the abolition of trials de novo. The appellate courts of the federal system have such power neither inherently nor by grant, express or implied. The Rules say that the findings of fact of the trial judge shall not be set aside unless clearly erroneous, and no exception is made as to facts found based upon writings. In this instance, the witnesses for Foundation took the stand and gave testimony as to the matters covered by the stipulation. According to the Rules, "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."[4]

The record clearly showed that Foundation was a business and not a charitable organization, as the trial court expressly found. Foundation was organized on May 11, 1950, as a non-profit corporation in California. The articles provided that the purpose of the corporation was the promotion and advancement of charitable, religious and educational projects on a non-profit basis. No member was to have any proprietary interest in its assets or income, and, upon dissolution, its assets were to be distributed to organizations of the classes above enumerated. The original Board of Trustees consisted of Paul M. Randall, Frank R. Randall, his son, Dorothy R. Ward, his sister, and two other persons. The capital of Foundation consisted of contributions made to it by Paul Randall during the first fiscal year of its existence of shares of stock, with a market value of approximately $20,000.00, which were then owned by Paul Randall and in which he had at the time a substantial profit. A great many of these shares were sold by Foundation immediately after they were contributed to it. No other person made any other gifts or contribution to the corporation, and none was solicited from anyone else. Paul Randall loaned Foundation, in 1950 and 1951, $155,200.00. He charged interest at the rate of two and one-half per cent per annum.[5] These loans had all been repaid to Paul Randall by Foundation early in the year 1952. The theory of Foundation is that Paul Randall had an intimate knowledge of the values of the small operators in oil and that he had an uncanny sense of when to buy and when to sell shares of stock in such concerns. In any event, with the money realized from the sales of the donated stock and the borrowed money, Foundation traded in securities, most of which were oil stocks listed on the Los Angeles Stock Exchange. The result was a net profit to taxpayer from security transactions of $30,238.27 during its first fiscal year. Foundation likewise received $10,285.00 in dividends from stocks. During this year it purchased 26,908 shares of stock,

2. Rules 58, 79(a), Federal Rules of Civil Procedure. There are in the record before this Court "Corrected Findings of Fact, Conclusions of Law and Judgment Nunc Pro Tunc," filed and entered March 1, 1956.

3. Rule 73(a), Federal Rules of Civil Procedure.

4. Rule 52(a), Federal Rules of Civil Procedure.

5. This rate of interest was approximately the same as the interest due from Randall to his brokers on his indebtedness to them.

while it sold 23,185 shares. Of all these, only 150 shares resulted in long-term gain. The balance of the sales were short-term transactions. The expenses of the operation for this year were $1,-532.36. This constituted the sum of the only activities of Foundation during its first year of existence, except that just before the fiscal year closed on April 30, 1951, it made a donation of $500.00 to a charitable organization. No gain was reported either by Foundation or by Paul Randall on the disposition of the shares above referred to. The difference between the sales price and the original purchase price paid by Paul Randall or the corporation was unreported as taxable income.

On September 12, 1951, Foundation was notified that its application for tax exemption had been denied. During the second fiscal year, Paul Randall contributed only $672.97. His financial operations of trading on the market continued, resulting in a profit from securities transactions in that year of $51,-079.61. Foundation also received dividends of $7,081.93. In this time, 25,966 shares of stock were sold, and Foundation purchased 15,936 shares. The expenses during the second year totalled $8,271.99. During this year, Foundation gave $11,200.00 to other charities. Of this amount, it must be noted, $8,-100.00 was paid on April 30, 1952, the last day of the current fiscal year. On October 9, 1952, Foundation filed a certificate of amendment of its Articles to declare that its specific and primary purpose was to establish a home for underprivileged boys, without regard to race, creed or color.

All of the sales and purchases of securities by Foundation were made by Paul Randall on its behalf through two brokerage houses which had been utilized by Paul Randall for his personal accounts. The same operators who had been performing services for Paul Randall in his individual capacity likewise executed orders for him on behalf of Foundation. The Board of Trustees of Foundation authorized Paul Randall to make trades without further formal authority and without regard to the nature of the security. It is notable that, after Paul Randall started trading for Foundation, market activities on his own behalf were considerably diminished. In these activities, both Paul Randall and Foundation acted as traders and not as dealers. Brokerage fees were paid on the usual commercial scale to those who dealt on the market for Foundation.

On the showing made, it is clear that Foundation was not a corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes. It is probably true that there is no showing that any part of its net earnings inured to the benefit of any particular shareholder or individual. In this connection, the brokerage services paid and the interest paid might possibly have been avenues by which a personal interest might have been acquired. However, Foundation was indubitably engaged in highly speculative business transactions. These were its sole reason for existence during the years in question. There is, of course, some testimony to the effect that Paul Randall looked about for sites for a boys' home and that he desired Foundation should accumulate a great deal more capital before pursuing this supposed objective. Be that as it may, we cannot escape the fact that its sole business was a trader of highly speculative oil stocks on the market. It is argued that this was not a "feeder" organization for charities and therefore that it does not fall within the category established for certain corporations which have been so defined by the decisions of this and other courts. But we do not so classify it. The evidence indicates it was not a feeder for any organization, charitable or otherwise. It was simply operated as a corporation to trade in stocks. Thus it was a business organization and did not fall within the statutory definition of those which are exempted under the statute.[6]

6. Internal Revenue Code of 1939, § 101 (6), 26 U.S.C.A. § 101(6).

For this reason, we do not think applicable the provisions of the present statute,[7] which refer to unrelated business net income of a corporation organized and operated exclusively for charitable purposes. The argument that this is not a competitive trade or business does not have weight, even though some courts may have strictly defined these classifications. But it is conceivable that a business corporation might well have been organized to do exactly what Foundation did. In fact, there are many in existence. Since we think this was in no respect a charitable organization in operation during its first two years, the law which provides all gains or losses from sale, exchange or other disposition of property shall be excluded from taxation except stock in trade and property held primarily for sale to customers in the ordinary course of trade or business does not apply here.[8]

The transactions of Foundation in securities were substantial and frequent in both years of its existence. They were not occasional or isolated ventures. These transactions in securities constituted almost the only activity of Foundation during these years. Patently, Foundation was operated as an organization actively engaged in conducting an investment business for profit. In Ralph H. Eaton Foundation v. Commissioner, 9 Cir., 219 F.2d 527, it was indicated that this Court would scrutinize very carefully the operations of any corporation claimed to be exclusively operated for charitable purposes, and it was there specifically pointed out that the ultimate destination of the funds was not the sole test to be applied in these cases, but rather that the business enterprise in which the taxpayer is engaged was cardinal in the determination of exemption.

In the case of John Danz Charitable Trust v. Commissioner, 9 Cir., 231 F.2d 673, it was pointed out that the use of the funds of a corporation for business purposes demonstrated these were not used exclusively for religious, charitable or other like purposes. Foundation seeks to distinguish this case and other like cases on the ground that there the money was used in trade and competitive commercial ventures. But the Danz case, supra, shows that the underlying rationale was not based upon any such distinction. It was there pointed out that, when the money of a corporation is mingled with that of other persons and used even in part year after year for speculative and business ventures, the risk of loss must be considered. It was also demonstrated that money is not used for charitable purposes when it is traded with in this fashion in speculative ventures. Of course, the cases above referred to do not deal with the specific sections which have here been called to our attention, and we do not claim them to be determinative here. The only ground of this decision is that the trial court was entirely correct in finding as fact that Foundation was not organized or operated exclusively for a charitable purpose during the fiscal years in question, but was operated for the primary purpose of carrying on a trade or business for profit and that trading in securities and receiving dividends were the only activities of Foundation during its first year of existence. We think that the latter finding might have been extended to the whole time of the existence of Foundation, but, since the trial court further found that no charitable activity was directly carried on by Foundation during its second fiscal year, these findings, taken together, are sufficient to foreclose any claim of exemption by Foundation.

It is not our intention to say that a case can never be made out on the facts of a particular situation for aggregation of funds by a corporation for ultimate disposition to a charitable pur-

---

7. Revenue Act of 1950, § 302(a), 26 U.S. C.A. Int.Rev.Acts, page 145; Internal Revenue Code of 1939, §§ 421, 422, 26 U.S.C.A. §§ 421, 422.

8. Internal Revenue Code of 1939, § 422 (a) (5), 26 U.S.C.A. § 422(a) (5).

pose. But a corporation which in its inception engages in trade, business or speculation, and only has a vague charitable design, does not in our opinion come within the terms of the statute.[9] An individual who engages in business and intends to give all his gains to charity receives exemption only upon certain gifts in a taxable year.[10] If he continues in the same business but incorporates as Paul Randall did here, he should have no better standing and the corporation so organized should have no better standing. An established charitable corporation may engage in the businesses which are permitted by the amendments to the statutes.[11] But these clauses have no relation to a corporation, such as this one, which does not become a charity simply by announcing that it intends to devote the profits to charity. The corporation is nevertheless competing with others in the market place. Since the business is speculative, the whole principal and profits may be wiped out. In the meantime, Paul Randall has not been required to pay taxes upon the profits from a speculative operation, he has continued his speculation under the corporate guise, and, if everything is lost, he suffers no personal detriment.

Affirmed.

9. Internal Revenue Code of 1939, § 101 (6), 26 U.S.C.A. § 101(6). The findings of fact by the District Court in Samuel Friedland Foundation v. United States, 144 F.Supp. 74, may serve to distinguish it. The character of the business from the inception and the lack of irrevocable commitment to a defined charitable and educational purpose make this doubtful. The reasoning of the opinion does not commend itself to this Court.

10. Internal Revenue Code of 1939, § 23(o), 26 U.S.C.A. § 23(o), allowing up to 20% of the adjusted gross income of the taxpayer.

11. Internal Revenue Code of 1939, § 422 (b), 26 U.S.C.A. § 422(b).