Robert **AZEVEDO**, Irene **Kershaw**, and
Paul **Kershaw, Jr.**, Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE**, Respondent.

No. 15270.

United States Court of Appeals
Ninth Circuit.

May 29, 1957.

Popper & Burnstein, Oakland, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., David O. Walter, Harry Baum, Walter R. Gelles, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before POPE, LEMMON, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

The Commissioner of Internal Revenue determined that Robert Azevedo, Paul Kershaw, Jr., and Irene Kershaw were deficient in their income tax payments for 1946, in the aggregate amount of $118,071.22. These determinations were sustained by the Tax Court of the United States.[1]

Asking us to review the decision of the tax court, petitioners contend that the findings of fact are not supported by the evidence. They also argue that the assessment of the asserted deficiency is barred by the applicable statute of limitations.

The 1946 income in question resulted from the sale, in that year, of wine produced in the fall of 1945 at Mills Winery, located near Sacramento, California. The tax court held that the wine was the property of John Azevedo, and that, under an agreement with his son, Robert Azevedo, and Paul Kershaw, Jr., the net profits of the sale were paid to the latter as compensation for their services in managing the business. The court therefore concluded that Robert and Paul should have paid a personal income tax thereon. Irene Kershaw, Paul's wife, is a party only because of the tax effect of California's community property law.

It is petitioners' position that the wine, when produced in the fall of 1945, became the property of a partnership consisting of Robert and Paul. They further contend that the entire inventory of wine was sold by the partnership to Mills Winery, Inc., when they organized that corporation in March, 1946. Between March and June, 1946, the wine was sold commercially in wholesale quantities. Petitioners therefore assert that Mills Winery, Inc., as the then owner of the wine, was subject to a corporate income tax on the profits of such sale, and that no individual income tax thereon should have been assessed against petitioners. The corporation did report and pay an income tax on the profits realized from the sale of this wine.

At the hearing before the tax court, oral testimony was received from Paul, and from Robert C. Burnstein, counsel for petitioners. A number of exhibits were introduced. There was also submitted a stipulation of facts which covers the entire transaction in considerable detail.

The circumstance that the parties stipulated to the basic facts does not alter our function in reviewing the sufficiency of the evidence to support the findings. The rule is nevertheless applicable that the findings of fact of the trial court are not to be set aside unless clearly erroneous.[2]

**1.** The tax court's memorandum findings of fact and opinion, issued on May 7, 1956, is not officially reported.

**2.** Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; Randall Foundation, Inc., v. Riddell, 9 Cir., 244 F.2d 803, decided January 18, 1957.

Petitioners argue, however, that the findings of fact entered herein are in conflict with the stipulated facts, and are, for that reason, clearly erroneous.

There are five asserted instances in which the findings of fact are said to be inconsistent with the stipulation of facts. One of these involves a recital in the stipulation that, commencing on August 1, 1945, Robert and Paul "conducted the operations in connection with the crushing of grapes for the manufacturing of wine and carried out said operations to and including March 1, 1946, as copartners, at which time the said Robert J. Azevedo and Paul Kershaw, Jr., had prepared for filing * * * a partnership Income Tax Return. * * *"

Petitioners argue that this stipulation is contravened by a finding of fact to the effect that, during this period, these two were employed in the sole proprietorship business of John Azevedo in making and selling wine, and that the net earnings of $202,113.82 were divided between them as compensation and salary for their services in the operation and management of the business.[3]

In our view, it is not necessary to conclude that the stipulation and the findings of fact are inconsistent in this respect. It is entirely possible that Robert and Paul, acting in contemplation of their future acquisition of the business, decided to pool their efforts and income as employees of John, under an oral partnership agreement. If this was the arrangement, there is no inconsistency between the recitals of the stipulation concerning this partnership and the finding of fact to the effect that Robert and Paul were employees of John at that time.

Another asserted instance of inconsistency between the written stipulation and the findings of fact pertains to the use which John Azevedo made of the money deposited in the business bank account. There is a recital in the stipulation to the effect that monies withdrawn by John Azevedo from the business bank account prior to March 4, 1946, "were used to pay the obligations of Paul Kershaw, Jr., and Robert J. Azevedo as copartners. * * *" This recital continues: "* * * and all monies withdrawn by John Azevedo after March 4, 1946, from said bank account and all expenditures that were made thereafter were made for the benefit of the corporation which came from the single bank account except the payments made to John Azevedo. * * *"

Petitioners argue that these recitals in the stipulation are contravened by the following findings of fact:

"There was no bank account opened in the name of the corporation as of March 4, 1946.

"Furthermore, the authority to draw checks on the bank account of the winery business remained exclusive in John until August, 1946, and until then petitioners had no authorization to make withdrawals from the account."

The quoted recitals of the stipulation are not inconsistent with these findings. However, they may be inconsistent with the findings of fact that John owned the wine, and that Robert and Paul were employees of John during that period. If John owned the wine and Robert and Paul were his employees, the obligations incurred in producing and selling the wine in question could not have been the obligation of the partnership or the corporation. It follows that, if the "obligations" referred to in this recital of the stipulation were those which arose in connection with the production and sale of the wine, the recital and the findings to which reference has last been made are in conflict.

Assuming that the term "obligations" was used in this sense, and that such a conflict therefore exists, the difficulty is

---

3. This finding is supported by a written contract to that effect, dated December 1, 1945, which contract was attached to the stipulation as an exhibit.

due to inconsistencies within the stipulation itself. Certain of the recitals in this stipulation tend to indicate that John owned the wine and that Robert and Paul were his employees. The recital on which petitioners rely, however, would point to the opposite conclusion. Faced with such a conflict in the stipulation itself, the tax court had to make a choice. The court apparently concluded that the recitals which were reflected in the findings of fact were more newly consistent with the record as a whole and more reasonable. We have no basis for reaching a contrary conclusion.

■ Petitioners contend that three additional recitals of the stipulation are in conflict with the findings of fact. One of these is to the effect that the corporate income tax return filed by Mills Winery, Inc., for the fiscal year ending March 3, 1947, inventories the wine in question at a value of $445,467.09. Another recital discloses that a financial statement prepared for the partnership on March 3, 1946, inventories this wine at the same value. The third such recital states that

"* * * all sales of wine made during the period March 4, 1946, to August 6, 1946, were picked up as corporate gross profit. All expenditures made from and as of March 4, 1946, were paid as corporate expenditures. * * *"

These recitals in the stipulation of facts evidence a binding concession by the commissioner that the partnership financial statement and the corporate books and income tax return are as stated in the stipulation. They do not, however, constitute a concession that the transactions are accurately recorded in those books and documents. This was still an open question. On the basis of the entire record, the commissioner, and later the court, found that these books and documents did not reflect the facts concerning the ownership and sale of the wine. The noted recitals in the stipulation did not preclude them from doing so.

■ Entirely apart from the asserted inconsistency between the stipulation of facts and the findings of fact, petitioners argue that the findings are not supported by the evidence. Our review of the record indicates to us, however, that the findings of fact are not clearly erroneous. Hence, they may not be disturbed on appeal.

Petitioners raise two questions in connection with the statute of limitations.

The 1946 income tax returns of Robert, Paul, and Irene, were filed on March 7, March 15, and March 20, 1947, respectively. Section 275(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 275(a), states the general rule that income taxes shall be assessed within three years after the return was filed. Under this statute, the time for notifying petitioners of deficiencies on these returns expired in March, 1950. The deficiency notices were not mailed until May, 1953.

An exception to this three-year limitation, however, is provided by § 275(c) of the Internal Revenue Code of 1939. It is there stated that, if the taxpayer omits from gross income an amount properly includable therein which is in excess of twenty-five per cent of the amount of gross income stated in the return, the tax may be assessed at any time within five years after the return was filed. The commissioner and the tax court held that petitioners had understated their gross income by more than twenty-five per cent.

■ The deficiency notices were not mailed until about two months after the expiration of this five-year period. Section 276(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 276(b), however, provides for an extension of time by agreement. It is there stated that, "where before the expiration of the time prescribed in section 275 for the assessment of the tax," the commissioner and taxpayer consent in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon.

Consents were executed by Robert on February 26, 1952, and by Paul and Irene on January 22, 1952. In each case, the consent extended to June 30, 1953, the

# 200

time within which the income tax for the year 1946 might be assessed. The assessments were made prior to that date.

Petitioners point out, however, that, while these consents were executed prior to the expiration of the five-year period permitted under § 275(c), they were not executed within the three-year period of limitations specified in § 275(a). It is petitioners' position that consents executed after the three-year period expires are ineffective. They concede that this question has been decided adversely to their contention in Ray Gasper, June 30, 1953 (T.C.Memo.Op.Dkt. 32252). This decision was reversed on another ground, in Gasper v. Commissioner of Internal Revenue, 6 Cir., 225 F.2d 284.

We believe that petitioners' contention is without merit. Section 276(b), relating to the extension of time by means of written consents, refers to "the time prescribed in section 275 * * *." This would include paragraph (c) of that section, providing for a five-year limitation in certain cases, as well as paragraph (a) of that section, which sets out the general three-year limitation. It is true that the efficacy of consents executed after expiration of the three-year period, but before the five-year period has run, will be dependent upon whether it is subsequently established that gross income was understated by more than twenty-five per cent. We do not, however, perceive how this undermines the express scope of § 276(b), relating to such consents.

The second point petitioners made with reference to the statute of limitations has to do with the burden of proof. Normally, the burden of proof is on the taxpayer to show that the commissioner's determination is invalid. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623. It has been held, however, that, where the commissioner seeks to take advantage of the five-year limitation applicable where the gross income was understated by more than twenty-five per cent, he has the burden to prove that the understatement reached this percentage.[4]

Petitioners contend that the commissioner did not sustain this burden of proof. We think that he did. The amount of the understatement, in fact, has never been in dispute, and exceeds twenty-five percent. The only factual quarrel has been whether there was any understatement. We have already indicated that the findings of fact on this point, which are adverse to petitioners, are not erroneous.

Affirmed.

---

4. Landau v. Commissioner, 21 T.C. 414; Jacobs v. United States, D.C., 126 F. Supp. 154, 159; Larzarus v. United States, D.C., 142 F.Supp. 897, 898.