**TRAVELERS INSURANCE COMPANY,**
a corporation, Appellant,

v.

**PEERLESS INSURANCE COMPANY,**
a corporation, Appellee.

No. 16617.

United States Court of Appeals
Ninth Circuit.

Feb. 27, 1961.

Tooze, Kerr & Tooze, Lamar Tooze, Lamar Tooze, Jr., Edwin Peterson, Portland, Ore., for appellant.

Mautz, Souther, Spaulding, Kinsey & Williamson, Wayne A. Williamson, James B. O'Hanlon, A. Allan Franzke, Portland, Ore., for appellee.

Before POPE, HAMLEY and MAGRUDER, Circuit Judges.

POPE, Circuit Judge.

This was an action between two corporations of diverse citizenship the object of which was to procure a declaration of their respective responsibilities under their separate policies insuring against personal injury liability.

The appellant Travelers had issued to St. Johns Motor Express Co., Inc., its so-called comprehensive liability policy which provided bodily injury liability insurance to various persons coming within the definition of the term "insured" as stated in the policy.

The appellee Peerless had issued to Publishers' Paper Company, a corporation, doing business at Oregon City, a similar policy.

One Christian, a truck driver for St. Johns, was making delivery of tanks of chemicals from his St. Johns truck at the loading dock of Publishers' Paper Company at Oregon City. Assisting in the unloading at the time was an employee of Publishers' who was using an overhead traveling crane to lift the tanks from the truck. In the operation of that crane one of the tanks swung against Christian, injuring him. Christian sued Publishers' and its employee for injuries alleged to have been caused by their negligence.

It is conceded that any liability on the part of Publishers' was covered under either policy. Not only would such liability come within the policy of appellee Peerless which had promised to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of liability imposed by law because of bodily injury, but wholly apart from the Peerless liability the Travelers' policy covered this liability also.

Travelers' policy provided that "use of an automobile includes the loading and unloading thereof". It also contained a definition of persons insured under the policy as follows: "With respect to insurance for bodily injury liability * * * the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *" An "owned automobile" was defined as an automobile owned by the named insured and "automobile" was defined as including any land motor vehicle or trailer.

The policy contained a further provision which while not at this stage insisted upon as determinative of liability, has another significance which will presently appear. That further provision is found in the statement that: "This policy does not apply: (f) under Coverage A [bodily injury] to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law. (g) under Coverage A, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured. * * *"

At the trial Travelers argued that clauses (f) and (g), supra, operated to eliminate any coverage on its part for the accident mentioned here since Christian was an employee of the named insured, St. Johns. But such contention has been abandoned and is not made upon this appeal. It therefore appears that the basis of Travelers' responsibility stems from

the fact that Publishers' employee in unloading the St. Johns' truck was using the same and since it was thus using it with the permission of the "named insured", Publishers' was included under the above quoted definition of persons insured under the policy.

The court below held not only that Travelers' policy furnished coverage but under the facts of this case that coverage was "primary", and that the policy of Peerless was merely "excess" insurance above all other applicable insurance; Peerless had defended the action brought by Christian against Publishers' in an Oregon court after first tendering the defense to Travelers. It settled the action with Christian by payment to him. The court held that Peerless was now entitled to judgment against Travelers for the amount paid on the settlement together with its costs and attorneys' fees incurred in connection therewith.[1]

On this appeal the appellant's first contention is that it did not become liable for the defense of the action by Christian or for settlement of his claim because of a failure to give it notice of the accident as required by its policy. The policy provision here referred to was as follows: "When an accident occurs written notice shall be given by or on behalf of the insured * * * as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses." The trial court found that notice to Travelers was given "as soon as practicable", and that the requirements of this condition of the policy had been satisfied.

The evidence shows that shortly after the accident which occurred on June 19, 1957, one Ross, an employee of a concern known as "Industrial Claims Service", which did the adjusting for Peerless, began an investigation of the accident. He knew nothing about the Travelers' policy and it did not then occur to him that there might be coverage in any other policy. Shortly before July 22, 1957, Ross sent a preliminary report of the accident to the underwriters for Peerless in San Francisco. Under date of July 22, 1957, they wrote to Industrial Claims Service acknowledging the report and stating: "We are curious to know if you have considered that this loss may actually be under the automobile policy for the truck owned by the St. Johns Motor Express, under the loading and unloading provisions of the policy." They suggested that Ross' concern "look into this matter very carefully." Ross called St. Johns and inquired of the person in charge there the name of the company which had insured the St. Johns truck and learned that it was Travelers. He also learned the name of the agent who had written the policy for Travelers. He called him inquiring about "the matter of the accident and who I should report it to and about their claims department", and it was suggested that he contact the claims manager of Travelers, one Johnson. Ross called Johnson, gave him a brief summary of what had occurred at the time of the accident, of how it happened, and inquired about the benefits and coverage under their policy for a loading operation. Ross also mentioned that he understood that the insured man was covered under State Workmen's Compensation. He was told by Johnson that Travelers' policy would not apply under the circumstances.

Ross accepted that statement and did nothing more about notifying Travelers and no formal written notice was given to Travelers until the following March 20, 1958. At that time Industrial Claims Service wrote to Travelers giving the circumstances, date and particulars of the accident to Christian and stating their understanding that Travelers' policy covered and would be primary coverage inasmuch as Publishers' was an additional insured under the Travelers' policy. The letter stated that on behalf of

---

1. By supplemental complaint Peerless added to its original prayer for declaratory relief, one for money judgment.

Publishers' and Peerless, "we are tendering this case to you". At that time no action had been filed by Christian but the letter informed Travelers the name of the Attorney representing Christian. Christian's action against Publishers' was filed approximately five months later on August 27, 1958.

The record does not show the exact date on which Ross made his inquiry of Johnson about Travelers' coverage. Ross testified that he talked to Johnson about the same time that he had talked to the representative of St. Johns inquiring about the name of the latter's insurance company. Hence it can be inferred that substantially immediately following the inquiry of St. Johns, Ross had his conversation with Mr. Johnson. The representative of St. Johns, with whom Ross talked, was asked when the inquiry was made of him as to whether St. Johns had a policy of insurance, and he replied that he could not give the date other than to say that "It was probably in July or August. It was sometime within the next couple of months after the accident." Two months after the accident would be August 19.

It will be noted that we are considering here two different periods which elapsed. The first is the period from the date of the accident, June 19, to the date of the telephone call. The inquiry is whether at the date of such call, perhaps as late as August 19, so much time had elapsed as to release Travelers for want of notice up to that time. The condition as to notice above quoted states the notice shall be given "as soon as practicable". The parties here concede that the trial court was correct in stating that the requirement meant that notice should be given "within a reasonable time".

█ In view of the fact that neither Ross, the adjustor, nor Publishers', knew initially that the Travelers' policy existed, and that the first time either of them was alerted to the fact that there might

be such a policy was when Ross received from the underwriters at San Francisco their letter of July 22, 1957, it would appear to follow that failure to give notice prior to that time would be altogether excusable and the whole question as to this period remains whether or not the delay beginning July 22, 1957, to the following August 19 (assuming the telephone call was that late), would be more than a reasonable time under the circumstances.

We think that it is not permitted to us to reject the finding of fact of the trial court which in substance amounted to a finding that there was not here an unreasonable delay; and that on the other hand, the telephone call to Johnson referred to came within a reasonable time. At that time we must agree Travelers' obligation had not been terminated. Of course both Ross and the representatives of Publishers' might have known that since St. Johns was a certified public carrier it must have been required to furnish liability insurance. But we agree with the trial judge that this does not render invalid the finding of the court that the date of the telephone call must have come within what under the circumstances was a reasonable time.

The next period of time involved is the further period from the date of the telephone call to Johnson to March 20, 1958, when a formal written notice was given. Plainly enough, so far as Ross was concerned he accepted at face value Johnson's statement that Travelers' policy did not cover this accident because the injured party was an employee of the named insured in Travelers' policy and he was covered under Workmen's Compensation. Now apparently the appellant argues that Ross should not have accepted that assurance of Mr. Johnson but should have looked the matter up for himself.[2] Johnson was Chief Claim Agent for Travelers and had been with the company for 22 years. It is not important whether this argument comes with good grace

---

**2.** Johnson testified that he had no recollection whatever of any such telephone call, but it was within the competence

of the trial judge to find, as he did, that this conversation occurred.

from Travelers; what is important is that this assurance of non-coverage is a circumstance attending this period of delay, a circumstance which bears upon the reasonableness of the delay.

Also to be considered is the fact that at the time in question it was not altogether certain that Johnson was not right and that the clause previously quoted to the effect that the policy did not apply to the injury to an employee of the insured did not bar recovery against Travelers.[3] As a matter of fact that very question was the subject of extensive litigation then pending in the courts of Oregon which finally resulted in that court's decision in September, 1960, in Cimarron Insurance Co. v. Travelers Insurance Co., Or., 355 P.2d 742. The Cimarron company contended that under facts similar to those present here, where the negligence was not that of the "named insured", the employee of a trucking company was excluded from that company's policy coverage because of a clause similar to those referred to by Johnson, (clauses (f) and (g), quoted above) in this case.

Only after the decision of the Supreme Court of Oregon on September 28, 1960, was it established that the injury to the employee was within the coverage of the truck company's policy since the exclusion clause of the policy which denied liability for an injury to "any employee of the insured arising out of and in the course of his employment by the insured" did not apply in that case since the injured man was not an employee of the person who was an "insured" under an omnibus clause. It was only then that Travelers conceded that the same rule must be applied to its policy here.

■ We are of the opinion therefore that when the trial judge held that it was reasonable for the adjusters for Peerless and for Publishers' to take Johnson at his word and to pursue the matter no further, his finding in this respect could not be said to be clearly erroneous and that the record justifies the finding of fact that due notice was given which means that notice was given within a reasonable time.

What is reasonable depends upon the surrounding circumstances and the outstanding circumstance here is the very difficulty and indefiniteness of the legal problem that the adjuster had to answer before he could be alerted to the possibility of there being coverage under the Travelers' policy.

Appellant argues that the question whether the requirement of notice was satisfied does not under the facts of this case present a question of fact but rather one of law. It is said that before the telephone call to Johnson several weeks elapsed and that this court is as able to calculate what that time was as was the trial court; and that whether Travelers' responsibility under the policy had then terminated can be determined by this court as well as by the trial court since we do not deal here with the question of credibility of any witness.

■ We think that the problem of reasonable time is like the problem of reasonable care—a question of fact, although it involves the drawing of inferences from other facts. The "clearly erroneous" rule of United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; "applies also to the factual inferences from undisputed basic facts." Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218. See Greene-Haldeman v. Commissioner, 9 Cir., 282 F.2d 884, 890, (concurring opinion). Even where the basic facts are stipulated, this court has held that findings of fact by the trial court might not be disturbed on appeal. Randall Foundation, Inc. v. Riddell, 9 Cir., 244 F.2d 803, 805; Azevedo v. Commissioner, 9 Cir., 246 F.2d 196, 197. Cf. Lassiter v. Guy F. Atkinson Co., 9 Cir., 176 F.2d 984, 993, 21 A.L.R.2d 1313.

■ Another significant reason why the lapse of time between the date of

3. And in the court below Travelers still contended that it had this defense.

the telephone call to Johnson and the actual written notice to Travelers cannot operate to bar recovery here is found in the common rule, applicable to all insurance, that if an insurer denies liability to the insured on grounds other than those relating to defects in the notice, compliance with the requirements as to notice and proof of loss will be deemed waived.[4] Such is the established rule in the state of Oregon. Ringo v. Automobile Ins. Co., 143 Or. 420, 22 P.2d 887, 889. Eaid v. National Casualty Co., 122 Or. 547, 259 P. 902, 906.[5]

We hold therefore that the trial court did not err in holding that the defense of want or insufficiency of notice was not available to the appellant here.

This brings us to the question whether the trial court was correct in holding that Travelers' policy afforded the primary coverage for the accident involved in this case; that Peerless' policy was excess insurance, and that Peerless was entitled to recover its expenditures in settling and defending the action brought against Publishers'. The answer to this must be determined by an examination of the provisions of the respective policies relating to "other insurance". The "other insurance" clause of Peerless' policy provides as follows: "If the insured has other insurance against the loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limits of liability stated in the declarations bear to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, that the insurance under this policy shall be excess insurance with respect to loss against which the named insured has other insurance disclosed to the company as in effect on the effective date of this policy and upon the basis of which the premium for the insurance under this policy is modified, but in such event the insurance under this policy shall apply only in the amount by which the applicable limit of liability stated in the declarations exceeds the applicable limit of liability of such other insurance.

"With respect to any valid and collectible insurance covering automobiles not owned by or registered in the name of the named insured and which extends to the benefit of the named insured, the insurance under this policy shall be excess insurance."

The significant portion of this provision is found in the last paragraph quoted above. It will be recalled that this is a provision of the Peerless policy and that the "named insured" under that policy is Publishers'. The meaning of this last paragraph therefore is as follows: "With respect to any valid and collectible insurance (Travelers' policy) covering automobiles (the St. Johns' truck) not owned by or registered in the name of the named insured (Publishers') and which extends to the benefit of the named insured (Publishers') the insurance under this policy shall be excess insurance." The meaning of this obviously is that since the insurance of Travelers covered an automobile which was not owned by Publishers, the insurance under the Peerless policy was to be deemed excess. The policy limits per person under Travelers was $100,000. Since the amount here

4. See Couch on Insurance, 2nd Ed., § 26.305: "If the insurer denies liability to the insured on grounds other than the sufficiency, lateness, or absence of notice or proof of loss, compliance with the requirements as to notice and proof of loss are waived, for the insurer having raised one objection or certain objections is deemed to have raised all that exist, and good faith prohibits it from thereafter raising any others. To illustrate, if the insurer has denied liability on the policy on the ground that it has been canceled it waives the failure to comply with the requirement of written notice and proofs of loss and waives any defect in the proof which has been delivered."

The author cites in this section numerous decisions illustrating that rule.

5. This rule was stated and recognized in the recent case of Grau v. Northwest Mutual Insurance Co., Or., 350 P.2d 1082, 1084, where other Oregon cases are cited. The rule itself is not applied because of special facts of that case.

involved is much less than that, if this provision of the Peerless policy is given effect, it means that Peerless was responsible for no amount.

The "other insurance" clause of the Travelers' policy is quite similar. It provides: "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

It should be noted that the last portion of that paragraph recites that Travelers' insurance shall be excess when there has been a loss arising out of the use of a "non-owned automobile" which loss is covered "by other valid and collectible insurance." But the vehicle referred to in this Travelers' policy is not a "non-owned automobile" and in view of the provisions we have noted above as contained in the Peerless policy, that policy did not provide in respect to this loss "other valid and collectible insurance." For this reason the Travelers' insurance is not excess.

However the first portion of the quoted clause down to the semicolon requires consideration here. That is the provision that if the insured has other insurance Travelers shall not be liable for more than its stated proportion of the loss, that is to say, pro rata, based on the applicable limit of liability of all "valid and collectible insurance." What we have then is one policy (Peerless) which describes its liability as "excess" and another policy (Travelers') which provides that it shall be liable only "pro rata" based on the limits of liability of all "valid and collectible insurance."

This sort of contest between the issuers of two such policies, one providing that its coverage is "excess" and the other providing that its insurance pays "pro rata", has arisen in a substantial number of cases in jurisdictions elsewhere. Many of these cases are cited in Citizens Mutual Auto. Ins. Co. v. Liberty Mutual Ins. Co., 6 Cir., 273 F.2d 189. There the court said (at page 193): "The foregoing authorities represent the overwhelming majority view that when an excess clause in one automobile liability insurance policy conflicts with another 'other insurance' clause, and more particularly a 'pro-rata' clause, in a second policy, the excess clause controls and is to be given its full effect."

The reasoning upon which such a conclusion is reached, as noted in that case, is substantially as follows: When one policy contains an adequate "excess" insurance clause it cannot be considered to be other "valid and collectible insurance against such loss". Hence there is nothing on which the pro rata clause of the other policy may operate. In Citizens Mutual, supra, the Liberty Mutual policy contained an applicable excess clause which the court says was "the only liability to which appellee was subject." The Citizens Mutual policy was the one which contained the pro rata clause. Since the Liberty Mutual policy was excess the court noted that "The Currie Co. did not have 'other insurance against the loss' covered by the Citizens Mutual policy, as the only other insurance it had did not become effective until the exhaustion of the Citizens Mutual policy limits. For that reason the pro-rata clause of the Citizens Mutual policy did not apply and it was liable to the full extent of its policy limits."

If similar reasoning were followed here, we would say that Travelers pro rata provision did not come into effect because Travelers had a policy limit of $100,000 which exceeded the amount of the loss in this particular case, and since Peerless' insurance would not be "valid and collectible insurance" until that policy limit were exhausted, there was no

"other insurance" as to which the pro rata provision could be applied.

Another respectable authority which adopts a similar line of reasoning and reaches a similar conclusion is American Automobile Ins. Co. v. Republic Indem. Co., 52 Cal.2d 507, 341 P.2d 675. We think that it cannot be said that those decisions are without logical basis.

█ Plainly the trial court adopted that view of this case in holding that Travelers was liable for the entire loss. However, a few weeks after the trial court had filed its opinion in this case, the Supreme Court of Oregon handed down its decision in Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., 219 Or. 110, 341 P.2d 110. That also was a case in which two automobile insurance companies, one referred to by the court as the St. Paul and the other referred to as the Oregon Company were contesting as in this case their respective responsibilities for the liability incurred in an automobile accident.[6]

Lamb-Weston had been using a truck leased from one Shafer. St. Paul had issued its policy to Lamb-Weston as the named insured. The Oregon Company had issued its policy against liability for property damage to Shafer. This policy contained an omnibus clause which operated to extend coverage to any person using the truck with Shafer's permission. The St. Paul policy contained the follow-

ing provision: "If the insured's liability under this policy is covered by any other valid and collectible insurance, then this policy shall act as excess insurance over and above such other insurance." In that respect the St. Paul policy resembled the Peerless policy here. The Oregon policy contained a provision similar to the pro rata clause of Travelers.[7]

The Oregon court held that the "other insurance" clauses in these two policies were repugnant to each other; that they must both be ignored, and that the loss must be prorated. In arriving at that conclusion the court reviewed many cases from other states which adopted various approaches to the solution of this sort of question and then turned to the decision of this court in Oregon Auto. Ins. Co. v. United States Fidelity & Guaranty Co., 195 F.2d 958, from which it quoted at considerable length and with approval. That was a case where each policy provided that under the circumstances there present, it should be excess only. It was held the policies were in this respect "mutually repugnant" and hence these "excess" provisions must be disregarded.[8]

The Oregon court, adopting a similar approach to the facts of its case, which it thought involved a direct conflict between the clauses of the respective policies, said:

"It is, therefore, at once apparent from a consideration of the above policy pro-

6. The suit against the Oregon Company was brought by both the insured, Lamb-Weston, and St. Paul, as Lamb-Weston had settled with the property damage claimant with funds borrowed from St. Paul.

7. 341 P.2d 110, 114: " * * * if the insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all valid and collectible insurance against such loss * * * ".

8. In that case both policies had "other insurance" clauses. These considered together were in direct conflict in that if the provisions of both policies were given full effect neither insurer would be lia-

ble. The United States Fidelity issued a policy on the driver's own car with extended coverage to borrowed cars but its other insurance clause provided that it would be excess as to any automobile not named. Under this clause United States Fidelity policy was excess as to this accident. Oregon Insurance had issued a policy to the owner of the borrowed vehicle; its "other insurance" clause made it excess as to drivers other than the named insured. This made the Oregon Insurance company's policy excess also. This court faced the necessity of dealing with this "unintended absurdity" and reached the only possible conclusion that these other insurance provisions were mutually repugnant and should be disregarded, and the liability was prorated.

visions that each company by its 'other insurance' clause seeks to limit its liability if other insurance is available to pay a part or all of an insured's loss. This is demonstrated by the fact that St. Paul provides that its policy can only be treated as 'excess insurance over and above' other 'valid and collectible insurance,' and the Oregon policy can be treated only as paying a proportionate share if there is other 'valid and collectible insurance' against such loss.

"It is also clear that as between the companies themselves no determination of whether or not there is other valid and collectible insurance can be established without first deciding which company is primarily and which secondarily liable, for St. Paul says it will pay only the excess after the limits of the Oregon policy are exhausted, and Oregon says, since there is other insurance, it will pay only a proportionate share of the loss.

"Thus, in such a situation, the court is faced with determining which company shall be considered primarily liable, or treating the 'other insurance' clause in each insurer's policy as so repugnant that they must both be ignored, and apply the rule that the loss shall be equally prorated between them." Upon rehearing the court held that the loss instead of being equally divided should be prorated on the basis of the coverage furnished by the two policies. Lamb-Weston, Inc. v. Oregon Automobile Ins. Co., 346 P.2d 643. See, also, General Accident, Fire & Life Assur. Corp. v. Continental Casualty Co., 9 Cir., 287 F.2d 464.

Since of course we are governed by the Oregon law in this case, the Lamb-Weston case, supra, of whose decision the district court did not have the advantage, is necessarily controlling here. Accordingly, the judgment of the court below must be modified by reducing the recovery of Peerless to a percentage of the total loss paid by it. The Peerless policy provided limits of $250,000 for bodily injury to one person; Travelers' policy provided $100,000. Travelers should pay that proportion of the total loss which $100,000 bears to $350,000.

The case is remanded to the district court with directions to modify the judgment by reducing the amount of recovery accordingly.