LIVING FAITH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Living Faith, Inc. v. Commissioner
Docket No. 22882-89X
United States Tax Court
T.C. Memo 1990-484; 1990 Tax Ct. Memo LEXIS 539; 60 T.C.M. (CCH) 710; T.C.M. (RIA) 90484; September 10, 1990, Filed An appropriate decision will be entered. Lorentz W. Hansen, for the petitioner. Vivian A. Moore, for the respondent. TANNENWALD, Judge. TANNENWALD
MEMORANDUM OPINION Respondent denied petitioner's application for recognition as a tax-exempt organization under section 501(c)(3). [1] Having exhausted its administrative remedies, petitioner is before this Court, pursuant to section 7428, seeking a declaratory judgment as to the correctness of respondent's action. The sole issue for decision is whether petitioner's vegetarian restaurants and health food stores are operated exclusively for an exempt purpose within the meaning of section 501(c)(3). *541 This case was submitted under Rule 122. The parties have filed a joint stipulation as to the correctness and completeness of the administrative record pursuant to Rule 217(b). The evidentiary facts and representations contained in the administrative record are presumed to be true for the purpose of this proceeding. Petitioner was incorporated on September 4, 1986, under the laws of Illinois. Petitioner's articles of incorporation state its corporate purpose as follows: Living Faith, Inc. is a not-for-profit corporation organized exclusively for charitable and religious purposes as set forth in section 501(c)(3) of the Internal Revenue Code, including the diffusion of moral and religious knowledge by means of public worship, encouragement, maintenance and promotion of health, and the building and/or leasing and maintenance of parsonages, chapels, and such other religious and charitable facilities as may be necessary or proper to the work of this corporation in the United States or in any foreign country, and to the maintenance of all missionary undertakings, all to carry out the religious purposes of the corporation in keeping with the doctrines of the *542 Seventh-day Adventist Church, including the health programs long sponsored by the church. Humanitarian services and programs will be operated so that the infirm, sick, aged, handicapped and underprivileged will be helped and taught how to find and maintain health, and this will include training in proper diet, in the avoidance of harmful lifestyles, in simple ways of living, and in maintenance of health and well being, all to carry out the religious purposes of the corporation in keeping with the doctrines of the Seventh-day Adventist Church that the whole man must be ministered to, for the healing of the soul and mind and body. * * * No substantial part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidate for public office. * * * No part of the net earnings of the corporation shall inure to the benefit of any member, trustee, director, officer of the corporation, or any private individual (except that reasonable compensation may be *543 paid for services rendered to or for the corporation affecting one or more of its purposes), and no member, trustee, director, office of the corporation, or any private individual shall be entitled to share in the distribution of any of the corporate assets on dissolution of the corporation. The duration of the corporation shall be perpetual unless dissolved sooner according to law. Upon dissolution or liquidation of the corporation, the board of trustees, after paying or making provision for the payment of all of the liabilities of the corporation, shall dispose of the remaining assets of the corporation by delivery to the general conference corporation of Seventh-day Adventist or to such other organization organized and operated exclusively for religious purposes as would then qualify under the provisions of section 501(c)(3) of the Internal Revenue Code as now existing or hereafter amended. Petitioner's board of directors and officers includes Kevin J. Connell, president; Charles R. Hansen, vice president; and Charles L. Austin, secretary; each is an ordained deacon of the Seventh-day Adventist Church. Petitioner's chairman, Ron Crary, is an ordained *544 Elder of the Seventh-day Adventist Church and as such is authorized to preach sermons and conduct various religious services at the Seventh-day Adventist Church. The Seventh-day Adventist Church places strong significance on good health as a means of promoting virtuous conduct. Conversely, Seventh-day Adventists believe that ill health promotes sin. Thus for adherents of the Seventh-day Adventist faith, the concept of health is permeated with religious meaning, and good health implies a vegetarian diet and abstention from tobacco, alcohol, and caffeine. Seventh-day Adventists accept the Old Testament account of mankind's fall from grace as literally true and believe that original sin consisted of eating food condemned by God and that observance of the dietary laws that prevailed in the Garden of Eden will help men and women to regain the sinless life originally created for them. Ellen G. White, prophetess and a founder of the Seventh-day Adventist Church, taught extensively the value of a vegetarian diet and wrote the following: God has declared that sanitariums and hygienic restaurants should be established for the purpose of making known to the world His law. The closing *545 of our restaurants on the Sabbath is to be a witness that there is a people who will not for worldly gain, or to please people, disregard God's holy rest day. These restaurants are to be established in our cities to bring the truth before many who are engrossed in the business and pleasures of this world. Many of these professed Christians, are but "lovers of pleasure more than lovers of God". These are to know that God has a people who fear Him and keep His commandments. They are to be taught how to choose and prepare the simple food that is best suited to nourish the body and preserve the health. The Seventh-day Adventist Church, through its world headquarters in Washington, D.C., maintains an association that oversees and promotes the religiously motivated health programs of its self-supporting institutions. Petitioner, sponsored by a local Seventh-day Adventist minister and the regional and national conferences of the church, is a member of the church's Association of Self-supporting Institutions. Petitioner's principal activity consists of operating two vegetarian restaurants and health food stores that are open to the public. Petitioner leases a 3,200 square foot store *546 in a shopping center in Oak Brook Terrace, Illinois, of which 2,400 square feet is used for its restaurant and the remainder for its health food store. Petitioner's meal and food prices are similar to other restaurants and food stores or higher than some. Petitioner sets prices for meals in its restaurants at three times the wholesale cost of the food, and petitioner sets prices for products in its stores by using prices recommended by wholesalers. Petitioner's hours of operation of its Oak Brook Terrace restaurant and health food store are as follows: Restaurant
Sunday, Tuesday, Wednesday
Thursday
11:30 a.m. - 7:30 p.m.
Monday
11:30 a.m. - 4:00 p.m.
Friday
11:30 a.m. - 2:00 p.m.
Saturday
Closed
Health Food Store
Sunday - Thursday
10:00 a.m. - 8:00 p.m.
Friday
10:00 a.m. - 3:00 p.m.
Saturday
Closed
Petitioner operates its restaurants and food stores under the name "Country Life." It is licensed without charge to use that name by Oak Haven, Inc., under guidelines which require that there be Seventh-day Adventist management and a good working relationship with the local Seventh-day Adventist Church. Petitioner operates its restaurants and *547 health food stores with the intent that its profits will be used to expand its facilities in order to provide other health programs. For a 12-month period ending September 30, 1987, and September 30, 1988, petitioner had the following receipts and expenses: 1987
1988
Sales Revenues
$ 73,134.78
$ 280,104.38
Cost of Merchandise
34,576.03
158,340.22
Gross Profit
38,558.75
121,705.99
General and
91,190.80
155,220.85
Administrative Expenses
Operating Loss
52,632.05
33,514.86
Donations
101,062.63
46,226.73
Misc. Income
6,999.20
In addition to its usual operating expenses, petitioner provides room, board, stipend, travel, and miscellaneous expenses for its volunteer staff, which includes Charles R. Hansen, Charles L. Austin, Sharyn Connell, Kevin Connell, and Joseph Castellano. In addition, the volunteer staff is also composed of individuals who would otherwise have difficulty in finding employment. One Saturday a month, petitioner provides free meals, and people attending are given the opportunity to sample vegetarian cuisine, to peruse Seventh-day Adventist literature, and to obtain informal answers to questions about the Seventh-day *548 Adventist Church. Petitioner offers a cooking school every few months which is open to the public and promotes the vegetarian life-style. Petitioner often gives free meals to the needy who do work in return. Each work day is begun with a devotional talk by a staff member, as well as hymn singing and a Bible reading. Bible seminars are conducted in the restaurant each Monday evening after closing. Religious literature is made available to petitioner's customers. As a result of petitioner's evangelistic work, 10-12 people have joined Seventh-day Adventist Churches. On March 29, 1988, petitioner applied for exemption as an organization described in section 501(c)(3) by filing a Form 1023. On June 21, 1988, respondent issued an adverse determination concluding that petitioner did not qualify as a tax exempt organization because its sole activity was commercial in nature and that it therefore failed to satisfy the operational test of section 501(c)(3). Under section 501(c)(3), an organization which is organized and operated exclusively for an exempt purpose (and meets the other requirements of the provision) qualifies as a tax-exempt organization. In order for an organization *549 to be exempt from Federal income taxes under section 501(a) and (c)(3), it must satisfy both the organizational and operational tests of sections 1.501(c)(3)-1(b) and 1.501(c)(3)-1(c), Income Tax Regs. If an organization fails to meet either test, it is not exempt. Section 1.501(c)(3)-1(a)(1), Income Tax Regs. Respondent does not contend that petitioner does not satisfy the organizational test. Nor does respondent argue that petitioner does not meet the private inurement test of section 501(c)(3). Rather he focuses his argument on petitioner's failure to satisfy the operational test. Petitioner has the burden of proof that respondent's adverse determination is erroneous. Rule 217(c)(2); P.L.L. Scholarship Fund v. Commissioner, 82 T.C. 196, 199 (1984). Section 1.501(c)(3)-1(c)(1), Income Tax Regs., provides: (c) Operational test -- (1) Primary activities. An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities *550 is not in furtherance of an exempt purpose. The word "exclusively" does not mean "solely" or "without exception." Church in Boston v. Commissioner, 71 T.C. 102, 107 (1978). An organization which engages in nonexempt activities can obtain and maintain exempt status so long as such activities are only incidental and insubstantial. Manning Association v. Commissioner, 93 T.C. 596, 603-604 (1989). Neither the Internal Revenue Code, the regulations, nor the case law provides a general definition of "insubstantial" for purposes of section 501(c)(3). This is a question of fact to be determined under the facts and circumstances of each particular case. Manning Association v. Commissioner, supra.
The purpose toward which an activity is directed, rather than the nature of the activity itself, determines whether the operational test is satisfied. The fact that an organization's activity constitutes a trade or business does not, in itself, disqualify that organization under section 501(c)(3). Junaluska Assembly Housing, Inc. v. Commissioner, 86 T.C. 1114, 1121 (1986). See also sec. 1.501(c)(3)-1(e)(1), Income Tax *551 Regs. The critical inquiry is whether petitioner's activity encompasses a substantial nonexempt purpose irrespective of the presence of other exempt purposes. See Manning Association v. Commissioner, supra at 604. We proceed to apply the foregoing principles to the facts revealed by the record. In so doing, we note that petitioner does not claim the benefit of any tax exemption of the Seventh-day Adventist Church. While there is a connection between the petitioner and the Church, petitioner is a separate entity which is neither owned nor controlled by the Church. See Basic Bible Church v. Commissioner, 74 T.C. 846, 855-856 (1980), affd. sub nom. Granzow v. Commissioner, 739 F.2d 265 (7th Cir. 1984). We also note that petitioner had only one activity which it claims has an exempt purpose, rather than a multiplicity of activities with multiple purposes, which is the typical situation involving the question whether an organization is exempt. See B.S.W. Group, Inc. v. Commissioner, 70 T.C. 352, 359 (1978). In this context, our task is to determine whether the nonexempt commercial aspect of petitioner's activity, *552 i.e., the sale of health foods, was either so independent of the religious purpose, i.e., furthering the dietary and health goals of the Seventh-day Adventist religion, or was sufficiently substantial that it cannot be said that petitioner was "operated exclusively" for religious purposes. See Schoger Foundation v. Commissioner, 76 T.C. 380, 386 (1981); Federation Pharmacy Services v. Commissioner, 72 T.C. 687, 691-692 (1979), affd. 625 F.2d 804 (8th Cir. 1980); and Pulpit Resource v. Commissioner, 70 T.C. 594, 611 (1978). Petitioner's activity was conducted as a business and was in direct competition with other restaurants and health food stores. Competition with commercial firms is strong evidence of a substantial nonexempt commercial purpose. B.S.W. Group, Inc. v. Commissioner, 70 T.C. at 356-358. While the fact that petitioner's operations showed a loss for its fiscal years 1987 and 1988 has some countervailing impact, it does not per se entitle petitioner to exempt status. Elisian Guild, Inc. v. United States, 412 F.2d 121, 125 (1st Cir. 1969), citing Golden Rule Church Association v. Commissioner, 41 T.C. 719, 731 (1964). *553 Petitioner argues that the elements of commercial activity and competition with other businesses do not justify denying it exemption under section 501(c)(3) because the purpose of its operations is to further the dietary beliefs and health principles of the Seventh-day Adventist religion. The administrative record herein reveals that the sanitariums and promotion of health is an important element of the Seventh-day Adventist religion. Moreover, there is a suggestion in petitioner's brief that Ellen G. White, a prophetess and founder of the Seventh-day Adventist Church, has written that "God has declared that sanitariums and hygienic restaurants should be established for the purpose of making known to the world His law." We do not think that these words mandate the operation of restaurants or, for that matter health food stores, as an essential ingredient of the Seventh-day Adventist religion. We think that the words constitute no more than an illustrative example of a type of activity which adherents might choose to carry on. In short, we are not convinced that the recitation of the possible use of restaurants and health food stores as a potential instrument of achievement of religious *554 goals is sufficient to overcome the clear commercial purpose with which petitioner's activities was imbued. See Scripture Press Foundation v. United States, 152 Ct.Cl. 463, 285 F.2d 800, 804 (1961). Nor do we think that the facts that the restaurants and health food stores were used as a means of disseminating literature and oral information about the Seventh-day Adventist religion, for the conduct of weekly after-hours Bible reading, or to provide employment to individuals who might otherwise be unemployable require the adoption of a different point of view. These elements are clearly peripheral and incidental to the substantial commercial purpose of petitioner's activities. Our view of the nature of those activities coincides with that of the Ninth Circuit Court of Appeals in Riker v. Commissioner, 244 F.2d 220 (9th Cir. 1957), affg. a Memorandum Opinion of this Court, which denied exemption to a restaurant operated by a "Church" over the contention that it was a training ground for student ministers and that, by contact with them, the public would become cognizant of, and appreciate, the principles of the "Church." In rejecting this contention, *555 the Court of Appeals concluded that such training was at most incidental to the commercial purpose of the restaurant, stating at 244 F.2d 228: The enterprise conducted by the taxpayer Riker was a restaurant, and just how rapport on matters of religion, and particularly that form espoused by the Church, could be attained by patrons and others dealing with the restaurant is somewhat of a mystery. The garb of a waiter or cook might cloak a sinner as well as a saint, and the brief and causal relationship between the student ministers and the patrons in and about the restaurant seems to be a poorly designed method to spread the fame of their order. To us it appears that this theory of disseminating knowledge and appreciation of the tenets of unselfishness and the appreciation of the Golden Rule, so much a part of the creed of this particular Church, is questionable from a practical standpoint. We comment thus, not to take issue with the Church doctrine in this respect, but for the more practical purpose of pointing out that so far as the public was concerned, the student ministers were no more than employees of the venture. We are not unaware of the seemingly contrary *556 thrust of Presbyterian & Reformed Pub. Co. v. Commissioner, 743 F.2d 148 (3d Cir. 1984), revg. 79 T.C. 1070 (1982), and Golden Rule Church Association v. Commissioner, sunra, both of which cases are heavily relied upon by petitioner. We are satisfied, however, that these cases are distinguishable. Presbyterian & Reformed Pub. Co. v. Commissioner involved an entity which was connected with the Orthodox Presbyterian Church (OPC) in much the same way as petitioner herein is connected with the Seventh-day Adventist Church and which published religious books setting forth the beliefs and practices of the OPC. Thus, the religious purpose was an essential ingredient of the publishing activity and represented the foundation of the reasoning of the Court of Appeals for the Third Circuit in restoring the exemption which the entity had from 1939 and which had been revoked in 1980. We note that judicial treatment of the qualification of publishers and sellers of religious books has had a checkered history. See Presbyterian & Reformed Pub. Co. v. Commissioner, 79 T.C. at 1083 n. 17. Similarly, in Golden Rule Church Association v. Commissioner, supra, *557 this Court concluded that the operation of a variety of businesses, which would normally be considered as having a commercial objective was an essential ingredient of religious activities in that they furnished the training ground for student ministers by affording those students the opportunity to learn and acquire the ability to articulate to others the manner in which the Golden Rule of Conduct could and should guide an individual's daily life. The same essential ingredient element is the foundation of Unity School of Christianity v. Commissioner, 4 B.T.A. 61 (1926), cited by petitioner, which involved a religiously-sponsored school, and Dumaine Farms v. Commissioner, 73 T.C. 650 (1980), which involved an experimental model demonstration farm. Finally the essential ingredient element is at the heart of Rev. Rul. 79-359, 1979-2 C.B. 226; Rev. Rul. 74-575, 1974-2 C.B. 161; and Rev. Rul. 71-580, 1971-2 C.B. 235, also relied upon by petitioner. In each of these rulings, the organization performed services which were required in order to further the tenets of a particular religion or necessary to enable members *558 of a particular religion to observe its principles. By way of contrast, petitioner herein has not shown that its operations were required to further the dietary teachings of the Seventh-day Adventist Church or necessary to enable members of the Seventh-day Adventist Church to comply with its beliefs. Petitioner's references to Rev. Rul. 76-33, 1976-1 C.B. 169; Rev. Rul. 76-94, 1976-1 C.B. 171; and Rev. Rul. 75-472, 1975-2 C.B. 208, dealing with unrelated trade or business income under sections 511 through 513, are likewise misplaced. We also note that revenue rulings are not binding on the Courts. Stubbs, Overbeck & Associates v. United States, 445 F.2d 1142, 1146-1147 (5th Cir. 1971). In each of the situations described in those rulings, the entity was engaged in other exempt activity which caused it to be exempt and there was a clear correlation between those activities and the particular activities in question. Moreover, it does not follow that because an activity would not be subject to the unrelated business income tax when conducted by an exempt organization, an entity conducting only that activity would be automatically *559 entitled to exemption under section 501(c)(3). See Afro-American Purchasing Center, Inc. v. Commissioner, T.C. Memo. 1978-31. In sum, we do not question the sincerity of the beliefs of the Seventh-day Adventist Church's teachings regarding diet and health or the fact that the individuals operating petitioner's restaurants and health stores thought that their activities were furthering those beliefs. However, those beliefs and the intensity of those convictions are not enough. See Scripture Press Foundation v. United States, 285 F.2d at 804. We simply are not persuaded that those beliefs were an essential ingredient of such operations so as to enable us to conclude that petitioner has carried its burden of proof. Cf. Borchers v. Commissioner, 95 T.C. (July 19, 1990). An appropriate decision will be entered. Footnotes
1. All statutory references are to the Internal Revenue Code as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩